**Felton Earl SINGLETON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–913.**

Court of Appeals of Arkansas.

Feb. 23, 2011.

William Owen James, Jr., Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Jake H. Jones, Asst. Atty. Gen., for appellee.

DAVID M. GLOVER, Judge.

Appellant, Felton Singleton, was convicted by a jury of the offenses of possession of cocaine with intent to deliver; possession of methamphetamine with intent to deliver; possession of marijuana with intent to deliver;[1] maintaining a drug premise; and misdemeanor tampering with physical evidence. He received an aggregate sentence of forty years for those convictions. On appeal, he argues that there is insufficient evidence to support the convictions. We affirm the convictions.

*Facts*

At trial, Sergeant Alan Hamby testified that on July 15, 2009, his SWAT team was involved in a search and seizure at 4305 Maryland Street. His team was first in the house, using a "flash bang" to distract any people in the house. Appellant was found lying on the floor of the bathroom at the back of the residence. He was secured but not moved from the scene. Two other individuals fled as the SWAT team entered the residence.

Detective Rick Kizer of the Little Rock Police Department narcotics division testified that he was the property officer in the search conducted at 4305 Maryland. Kizer identified several bags of marijuana found in various locations in the house, including underneath Singleton on the bathroom floor, and several bags of drugs in the toilet. Specifically, he testified that an off-white rock wrapped in plastic, weighing 2.29 grams, was found in the toilet together with another baggie with white residue and some powder or pills. He found a box of sandwich bags on the dryer in the kitchen and some pills in the front room. He also found surveillance equipment outside the house and audio-surveillance equipment inside the house. Kizer obtained Singleton's address from conducting an interview with Singleton, who gave his address as 4305 Maryland. According to Kizer, on Singleton's bond sheet, he listed his address as 4305 Maryland as well. Kizer did not get any information from Singleton about who owned the residence, but he did retrieve paperwork indicating that Felton Duncan, Singleton's son, lived at the residence. Detective Tim Stankevitz, a Little Rock narcotics detective, testified that he found two hydrocodone pills in a bedroom dresser but that he had never

---

1. Singleton does not appeal his conviction for    possession of marijuana with intent to deliver.

seen Singleton selling drugs out of the house at 4305 Maryland.

Detective Lawrence Wellborn, also a Little Rock narcotics officer, testified that the surveillance system at 4305 Maryland was a closed-monitor system that had two cameras at the front of the residence and a monitor inside; people in the house could see persons approaching the front door. He explained that such a system jeopardized the safety of the SWAT officers by allowing early detection of the officers' presence and giving the people inside time to arm themselves and flush any narcotics. Wellborn testified about packaging and pricing drugs. Marijuana packaged for street sale is in small packages; low-grade marijuana sells for five to ten dollars for five grams, while high-grade marijuana sells for about thirty dollars a gram; crack cocaine is packaged in quarter grams, half grams, grams, or an eight ball (three and a half grams); a rock is about a quarter gram; and each rock sells for twenty-five dollars, with an eight ball selling for about $280. A simple user buys a quarter to a half gram of cocaine for personal use, which would be about fifty dollars, and it is not common to go above a gram for personal use, but addicts usually buy rocks because it gives the user a quicker high. Wellborn testified that the rock of cocaine found in the toilet was well above the amount for one person's use. He also explained that methamphetamine is packaged and sold in the same way as cocaine—either powder or "ice," which is like rock candy, but that it can also be purchased in pill form. With a pill press, a person can make pills from methamphetamine powder or any other type of drug. Methamphetamine-cocaine pills sell for between forty and eighty dollars per pill, and a person buys one or two pills at a time. Wellborn considered the amount of pills in the house to be a sale amount.

Wellborn stated that many drug houses, or "trap houses," did not keep a large quantity of drugs on the premises—sellers buy large amounts of drugs, but they take only small amounts to the trap house and call for more when needed. Wellborn explained that in such a house, the drugs would be on one person, and the money would be kept by another person, keeping the drugs and money separate.

Kim Brown, a forensic drug chemist for the Arkansas State Crime Lab, testified that the cocaine base weighed 2.2957 grams. She said that five of the pills found had a Batman emblem on them, contained cocaine, methamphetamine, caffeine, Levamisole, dimethylsulfide, and ibuprofen, and weighed 1.5795 grams; and that three of the pills had a Transformer emblem on them, contained cocaine, methamphetamine, caffeine, dimethylsulfide, and Levamisole, and weighed .9212 grams. The total weight of the eight pills was 2.5007 grams. She could not differentiate between the weight of the substances in the pills.

At the close of the State's case, Singleton moved for directed verdicts on all counts. His motions were denied by the trial court.

Destiny Smith, Singleton's wife, testified that her husband had been a drug addict as long as she had known him; that he would be gone from their house for weeks; and that he would go to his son's house at 4305 Maryland and smoke and "come home crazy." However, she denied that he lived at 4305 Maryland, stating that they lived on North Chicot Road.

Singleton testified in his own defense. Though admitting he was at the Maryland Street house on July 15, 2009, he stated the house belonged to his son and his son's girlfriend, and that he lived on North Chicot Road. According to Singleton, his son allowed him to get high for free, so he was

at his son's house all the time doing drugs, including all night on July 15, when someone came over the radio and said, "flush it" because the police were outside. Singleton said that another guy in the house gave him drugs to flush, but before he made it to the bathroom, the diversion device went off and scared him; he froze, threw the drugs in the toilet, and lay down. He said he had time to flush the drugs but did not do it. Singleton admitted he was on the bathroom floor surrounded by drugs when the officers entered the residence. He denied that the drugs were his and claimed he was just there to get high. He denied selling drugs out of the house.

On cross-examination, Singleton admitted that he lied to both the police detective and the bail bondsman when he gave them his address as 4305 Maryland. He said that he gave the bondsman that address because he did not have all of the money for his bond, and if the bondsman looked for him at that address, he would not be there.

At the close of the evidence, Singleton renewed his motions for directed verdict, which were again denied. The jury found Singleton guilty of the charged offenses, and Singleton filed a timely appeal.

### Standard of Review

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Morris v. State,* 2011 Ark. App. 12, 2011 WL 51462. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict, considering only that evidence supporting the verdict. *Id.* It is the responsibility of the fact-finder, not the appellate court, to weigh the evidence and to make credibility determinations. *Id.*

### Possession of Cocaine with Intent to Deliver

It is unlawful for a person to possess a controlled substance with intent to deliver it. Ark.Code Ann. § 5–64–401(a) (Supp.2009). If a person possesses a quantity of cocaine in excess of one gram, that raises a rebuttable presumption that the person possesses the controlled substance with intent to deliver. Ark.Code Ann. § 5–64–401(d)(1) & (3)(A)(i) (Supp.2009). Under this point, Singleton does not argue that he did not possess the cocaine; rather, he argues that there is not sufficient evidence that he possessed the cocaine with intent to deliver because there were no scales, money, guns, or cutting materials present; the cocaine was in one bag, not individually packaged for resale; and the State offered no evidence of any prior distributions by Singleton. However, with the exception of Detective Stankevitz's testimony that he had never seen Singleton selling drugs out of the house at 4305 Maryland, nothing else was presented at trial to rebut the statutory presumption.

Singleton cites *United States v. Stephens,* 23 F.3d 553 (D.C.Cir.1994), in support of his argument that his conviction for possession with intent to deliver should be reversed, stating that it is almost directly on point and is instructive. While it is true that there are similarities between that case and the present case, there is one critical distinction—*Stephens* did not contain a statutory provision creating a rebuttable presumption of intent to deliver when a person possesses one gram of cocaine. Here, the cocaine had a weight of 2.2957 grams, over twice the amount of cocaine needed to trigger the rebuttable

presumption. To hold that the statutory presumption is insufficient to find substantial evidence of intent to deliver would render the presumption of Ark.Code Ann. § 5–64–401(d) meaningless. *See Lewis v. State,* 2010 Ark. App. 641, 2010 WL 3783690.

### ₇*Possession of Methamphetamine with Intent to Deliver*

■ It is unlawful for a person to possess a controlled substance with intent to deliver it. Ark.Code Ann. § 5–64–401(a). On appeal, Singleton argues that the State failed to prove that he possessed a usable amount of methamphetamine, and therefore could not prove that he possessed methamphetamine in the presumptive statutory amount for possession with intent to deliver methamphetamine, which is 200 milligrams. Ark.Code Ann. § 5–64–401(d)(3)(A)(ix) (Supp.2009). We hold that not only did Singleton have a usable amount under our case law, but it was also enough to trigger the rebuttable presumption that he possessed the methamphetamine with intent to deliver.

Singleton argues that although he was in possession of eight pills containing methamphetamine and other components, there was no evidence that the methamphetamine was anything over a trace amount. He cites *Harbison v. State,* 302 Ark. 315, 790 S.W.2d 146 (1990), for the proposition that possession of less than a usable amount of a controlled substance does not constitute criminal possession. In that case, our supreme court reversed and dismissed a cocaine-possession conviction when all that the appellant possessed was a bottle that had a trace amount of cocaine that was too small to be weighed. Singleton contends that this court's decision in *Ficklin v. State,* 104 Ark.App. 133, 289 S.W.3d 481 (2008), that pills containing methamphetamine and ecstasy constituted a usable amount of the controlled substances because they were in the consumable form of a pill, directly contradicts *Harbison* and must be overruled. Singleton argues that the holding in *Ficklin* puts the burden of proof on the defendant to disprove that the pill has a sufficient quantity of the controlled substance, ₈and allows the jury to speculate to find a sufficient amount of the controlled substance to constitute a usable amount. We disagree.

First of all, in *Ficklin,* this court distinguished *Harbison* because in that case, there was only a powder residue, as opposed to pills in *Ficklin.* Second, "the measurable amount of the methamphetamine for the purpose of inferring intent includes the amount of the pure drug plus all adulterants." *Jones v. State,* 357 Ark. 545, 553, 182 S.W.3d 485, 489 (2004) (citing *Piercefield v. State,* 316 Ark. 128, 131, 871 S.W.2d 348, 350 (1994)). In this case, the eight pills, which contained methamphetamine and other adulterants, weighed a total of 2.5007 grams, which is well in excess of the 200 milligrams required to give rise to the rebuttable presumption that a person possesses methamphetamine with the intent to deliver.

### *Maintaining a Drug Premise*

■ Arkansas Code Annotated section 5–64–402(a)(2) (Supp.2009) provides that it is unlawful for any person

[k]nowingly to keep or maintain any . . . dwelling, building, or other structure or place or premise that is resorted to by a person for the purpose of using or obtaining a controlled substance in violation of this chapter or that is used for keeping a controlled substance in violation of this chapter.

Singleton admits that there was "no doubt" that there was sufficient evidence that 4305 Maryland was used for obtaining or using controlled substances. However,

he argues that there was insufficient evidence to show that he kept or maintained the premise. He contends that there was "no indicia" that he resided at or owned the residence at 4305 Maryland—no evidence that he had any clothes there, that he was the lessee, or that he paid any of the utilities. He states that the most damaging evidence was that he put the 4305 Maryland address on his bail-bond contract and told one of the officers during an interview that he lived at 4305 Maryland, but he points to the evidence from his wife and from him that he lived on North Chicot Road and that he gave the Maryland Street address so that the bail bondsman would be unable to find him. The evidence is in conflict, and it was the jury's duty to resolve such a conflict, not this court's. *Morris, supra.* It is apparent that the jury did not believe Singleton's explanation or his wife's testimony.

### Tampering with Physical Evidence

Arkansas Code Annotated section 5–53–111 (Repl.2005) pertains to tampering with physical evidence and provides:

(a) A person commits the offense of tampering with physical evidence if he or she alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its veracity, legibility, or availability in any official proceeding or investigation.

(b)(1) Tampering with physical evidence is a Class D felony if the person impairs or obstructs the prosecution or defense of a felony.

(2) Otherwise, tampering with physical evidence is a Class B misdemeanor.

Singleton argues that there was no testimony that any evidence was altered or destroyed; that just because the drugs were in the toilet did not mean that it had been tampered with; and that he was charged with and convicted of the offense of tampering with physical evidence, not attempted tampering with physical evidence. We find this argument unpersuasive. Singleton was not convicted of felony tampering with physical evidence, which requires actually impairing or obstructing the prosecution or defense of a felony. Instead, he was charged with misdemeanor tampering with physical evidence, which indicates that he did not succeed in impairing or obstructing the prosecution of the drug felonies. By Singleton's own admission, he was given the drugs to flush down the toilet when the police were seen approaching the house, and he took the drugs to the bathroom and threw them into the toilet, but did not succeed in flushing them, having been distracted by the "flash bang" device used by SWAT when they entered the residence. We hold that there is sufficient evidence to support the jury's verdict that Singleton tampered with the physical evidence when he threw the drugs into the toilet to flush them with the purpose of impairing the availability of the drugs for use in prosecution. The fact that he did not actually impair or obstruct the prosecution is why he was not convicted of a felony.

Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.