Cite as 2021 Ark. App. 469

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-21-132

| | |
|---|---|
| DANIEL KEYS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | OPINION DELIVERED DECEMBER 1, 2021<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR-19-411]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Daniel Keys was convicted of possession of marijuana with intent to deliver, possession of drug paraphernalia, and fleeing, and he was sentenced to an aggregate term of twenty years' imprisonment in the Arkansas Department of Correction. On appeal, he argues that the circuit court erred by denying him the right to cross-examine a State's witness about high-speed chases and thereby violated his right to confront witnesses against him. He also argues that the circuit court erred by denying his directed-verdict motions on both possession charges. We affirm.

### I. *Facts*

On November 15, 2019, an affidavit describing the basis for Keys's arrest was filed in the Hot Spring County Circuit Court, and an arrest warrant was issued. The affidavit alleges that on November 8, Malvern Police Sergeant Heath Dickson observed Keys run a stop sign after he had passed Dickson's patrol car, and Dickson turned around to follow

Keys. Dickson activated his emergency lights and siren, and a high-speed chase ensued. The affidavit describes that Keys ignored at least four stop signs and traveled at 65 miles an hour on residential streets and at speeds topping 120 miles an hour on Highway 67. During the chase, Keys traveled in the wrong lane and cars were forced to swerve into the ditch to avoid collision. Keys ultimately lost control of his vehicle, and it slammed into a tree, coming to a stop. Keys fled on foot, and Dickson released his police dog. Keys was eventually restrained and placed in the patrol unit. His vehicle was searched, and police found marijuana, pipes used for smoking marijuana, and a digital scale.

On December 19, the State charged Keys by information with (1) possession of a Schedule VI controlled substance, marijuana, with the purpose to deliver, a Class D felony—in violation of Ark. Code Ann. § 5-64-436 (Repl. 2016); (2) possession of drug paraphernalia, scales, a Class D felony—in violation of Ark. Code Ann. § 5-64-443 (Supp. 2021); (3) fleeing, a Class D felony—in violation of Ark. Code Ann. § 5-54-125 (Supp. 2021); and (4) being a habitual offender—previously convicted of more than one felony but fewer than four—in violation of Ark. Code Ann. § 5-4-501 (Supp. 2021).

At the jury trial held on September 28, 2020, Officer Dickson testified about the facts of Keys's arrest, and he explained the details of the chase that occurred after Keys ran a stop sign and refused to pull over after Dickson had activated his lights and siren. Dickson described each road and turn taken by Keys during the police chase, and he said that at one point during the chase, Keys turned on Park Street, which is next to a school, and that students and teachers were present at that time, which was about 4:20 p.m.

During cross-examination, Keys's attorney asked, "Do you know that a lot of cities don't even allow high-speed chases anymore?" The State objected on the basis of relevancy, and the circuit court sustained the objection. When testifying on redirect examination, Dickson testified that he performed an inventory of Keys's vehicle and found what he thought to be marijuana and a digital scale. He said that, on the scale, there was a green leafy substance that was consistent with marijuana.

Sammy Williams, a forensic chemist employed by the Arkansas State Crime Laboratory, testified that he tested the green vegetable material found in Keys's vehicle, and he identified it as marijuana. He said that the total weight of the marijuana was 14.0291 grams.

Malvern Police Officer Keith Prince testified that he was involved in the chase on November 8. He had been on patrol when he received a radio call from Dickson, who was involved in a vehicle pursuit. He caught up to Dickson and fell into the pursuit. This incident happened around 4:20 p.m., it was during a school "let-out" time, and he recalled seeing children walking on the sidewalk with backpacks as he was traveling at 80 miles an hour down Mill Street. He saw Keys run stop signs and swerve into the opposite lane, and he described Keys's passing a line of cars traveling up a hill and forcing the oncoming car to swerve toward the ditch. He saw Keys's car spin out of control and hit a tree, and he saw Keys get out of the vehicle and run. He said that Dickson and his canine apprehended Keys.

Malvern Police Officer Brian Johnson testified that he heard Dickson's radio call and left from the police department to pursue Keys. He could tell from Dickson's

communications that he could encounter the pursuit from an opposite direction. He knew Keys would be coming down Sulphur Springs Road, so when approaching from the opposite direction, he slowed to a stop because Keys was coming around the curve in his direction and traveling on the wrong side of the road. He said that Keys swerved around him and that he did not witness the end of the pursuit.

Malvern Police Officer Doroteo Delacruz testified that he was involved in Keys's pursuit on November 8. Keys ran a stop sign and was driving toward him at a "head-on angle." He hit his brakes and expected an impact, but Keys "cut short" and maneuvered through traffic back into the right lane. He saw Keys weave in and out of oncoming traffic, and this incident occurred right after school had let out, which is a time of heavy traffic on that road.

At the close of the State's case, Keys moved for a directed verdict on each charge, and the circuit court denied the motions. Thereafter, Keys testified that on November 8, he saw Officer Dickson begin to pull around behind him. He said,

> I was at a stop sign. I didn't put on my blinker to turn left. And I didn't know if he was going to try to get me or what, you know. But I drove, like, wasn't, you know, 70 or nothing down the street but I drove kind of quickly down that street. . . . [I]t was full of bad potholes, and I swerved to avoid them. There was no traffic on that street at all. I turned on the right and every turn I did I used my blinkers, you know, because I seen him. I heard the siren about there approximately when I came to the stop sign at Cherry Lane. I slowed down. . . . I'm not Mario Andretti. I kept going because, you know, I don't have a license. I haven't had a license for years. My truck had already got hijacked by impound and just my experience if you make it to your driveway your vehicle don't get stolen. You know, you get to keep it. I didn't want the girl to lose her car for me driving it trying to check on my house. . . . I didn't want to screw her out of her car. So, I tried to, I didn't really try to get away from him. You know, that's the reason I used my blinkers to let him know, because at Sulphur Springs I came to a full stop. You know, I even put it in park for a second because I thought about just -- and I was, like, well, no,

4

the car [will] get impounded if I do this sh--, you know. Once I saw him coming up over the curve, around the curve I went ahead and turned onto Sulphur Springs.

. . . .

But, no, I didn't, I mean, I probably did 20, 20 [mph] over the speed limit or so, I mean, maybe 30. And I didn't push anybody off the road or anything like that. It's my belief that there was, maybe been a couple cars that had pulled off to the side of the road, not to avoid me, but because they saw blue lights. That's what you're supposed to do, you know. That's what I've always done in the past. But, yeah, I just, I didn't want her car to get impounded, you know. I was trying to make it to my house.

. . . .

The scales, I don't know. . . . Those aren't mine.  The bag of weed does look like a bag that I had in my pocket.  I don't sell weed. . . . I'd smoke marijuana.  That's not enough to sell anyway, you know, really.

At the conclusion of Keys's testimony, he moved for a directed verdict and asked that the court reporter include his previous motions verbatim.  The circuit court denied the motions, and the jury found Keys guilty on each count.  He was sentenced as a habitual offender to five years' imprisonment for possession of marijuana with intent to deliver; three years' imprisonment for possession of drug paraphernalia; and twelve years' imprisonment for fleeing.  The court ordered that the sentences should run concurrently.

## II. *Standard of Review*

It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Farris v. State*, 2021 Ark. App. 191, at 4, 620 S.W.3d 559, 561–62.  Evidence is sufficient if it is substantial. *Id.* Substantial evidence is that which is of sufficient force and character that it will compel a conclusion without resort to speculation or conjecture. *Id.* On review, the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

Keys argues in his first point on appeal that he was denied his Sixth Amendment right to confront witnesses against him. However, because Keys also argues that the circuit court erred by denying his motions for directed verdict, double-jeopardy concerns require us to first address the sufficiency challenges. *Taffner v. State*, 2018 Ark. 99, at 5, 541 S.W.3d 430, 434. Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984) (discussing *Burks v. United States*, 437 U.S. 1 (1978)).

III. *Possession of Marijuana with Intent to Deliver*

Keys contends that the circuit court erred in denying his motion for directed verdict on the charge of possession of marijuana with intent to deliver. He claims he argued in his motion that the State failed to connect him to the marijuana. He argues that the State's evidence was that a car was searched, that marijuana was found, but that the State failed to prove that either the car or the marijuana was his. He argues that the "[S]tate specifically said" the marijuana was not found on him, and he claims that "the jury was left to speculation and conjecture as to the possession of marijuana."

A person commits possession of a Schedule VI substance with the purpose to deliver if he possesses a Schedule VI controlled substance and the State proves purpose to deliver by any of the following factors:

    (1) The person possesses the means to weigh and separate a Schedule VI controlled substance;

    (2) The person possesses a record indicating a drug-related transaction;

    (3) The Schedule VI controlled substance is separated and packaged in a manner to facilitate delivery;

(4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of the Schedule VI controlled substance;

(5) The person possesses at least two (2) other controlled substances in any amount; or

(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver a Schedule VI controlled substance.

Ark. Code Ann. § 5-64-436(a) (Repl. 2016). According to Arkansas Code Annotated section 5-64-436(b)(2), a person is guilty of a Class D felony if he "possessed more than fourteen grams (14g) but less than four ounces (4 oz.) by aggregate weight . . . of a Schedule VI controlled substance."

The evidence showed that Keys was the driver and sole occupant of the car and that he fled so that Officer Dickson could not take his bag of weed. *See Jones v. State*, 2010 Ark. App. 775 (flight following the commission of an offense is a factor that may be considered with other evidence in determining guilt). Officers found 14.0291 grams of marijuana and digital scales, and Keys testified that the bag of marijuana was his. Accordingly, sufficient evidence supports his conviction for possession of marijuana with intent to deliver.

IV. *Possession of Drug Paraphernalia*

Keys claims that the circuit court erred in denying his directed-verdict motion on the possession-of-drug-paraphernalia charge. He contends that he argued the State had failed to connect him to the scales or to "say where the scales came from or tie the scales to the marijuana." He argues that the State failed to "state" it was his car or his scales and that it failed to explain how the scales were drug paraphernalia.

Keys argues below,

7

He's charged with the offense of possession of drug paraphernalia with the purpose to use the drug paraphernalia to manufacture a controlled substance. There's no evidence of the manufacturing here, Your Honor. He just had a set of scales. They also didn't say where the scales came from or tie it to the marijuana.

The State asserts that Keys's directed-verdict motion did not preserve the sufficiency argument he makes on appeal. *See Smith v. State*, 2021 Ark. App. 255, at 4–5 (citing Ark. R. Crim. P. 33.1(a) & (c)). Alternatively, the State claims that sufficient evidence was presented that Keys possessed drug paraphernalia.

"[D]rug paraphernalia" includes "[a] scale or balance used, intended for use, or designed for use in weighing or measuring a controlled substance." Ark. Code Ann. § 5-64-101(12)(B)(v) (Supp. 2021). "[P]ossession" is the exercise of control over a tangible object; such possession can be either actual or constructive. *E.g.*, *Clark v. State*, 2015 Ark. App. 679, at 5, 477 S.W.3d 544, 546. "[P]roof that the defendant is the driver of the car is evidence that he or she exercised dominion and control over it." *Lockheart-Singleton v. State*, 2018 Ark. App. 307, at 6.

At trial, the evidence showed that Keys was the sole occupant of the car. Instead of stopping when Officer Dickson initiated his lights and siren, Keys fled. He exercised dominion and control over the contents of the car, which included the digital scale. Marijuana residue was found on the scale, and over fourteen grams of marijuana was seized. Accordingly, we hold that sufficient evidence was submitted to support Keys's conviction for possession of drug paraphernalia.

## V. *Confrontation Clause*

Keys argues that the circuit court abused its discretion when it refused to allow him to fully cross-examine the State's witness about his knowledge of high-speed-chase policies.

We hold that this argument is not preserved for appellate review because it was not raised at trial, and no ruling was obtained from the circuit court. *Neal v. State*, 2020 Ark. App. 245, at 3, 601 S.W.3d 135, 137 (to preserve a Confrontation Clause argument on appeal, a defendant must obtain a ruling from the circuit court on that specific issue).

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.