Cite as 2024 Ark. App. 207

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-23-337

| | |
|---|---|
| REGINALD FEATHERSTON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered March 27, 2024<br><br>APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT<br>[NO. 29CR-20-186]<br><br>HONORABLE JOE C. SHORT, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Reginald Featherston appeals his convictions by a Hempstead County Circuit Court jury of one count of possession of methamphetamine with purpose to deliver, a Class A felony, and one count of possession of drug paraphernalia, a Class D felony. Featherston also appeals the circuit court's denial of his motion for a new trial. We affirm.

## I. *Relevant Facts*

On August 17, 2020, Featherston was charged with one count of possession of methamphetamine with purpose to deliver, and one count of possession of drug paraphernalia. During jury selection on August 29, 2022, the court asked the jurors if they knew of any reason that, if chosen as a juror, he or she could not be absolutely fair and impartial and base his or her opinion on the law and the facts presented. Morgan Satterwhite, who became Juror #2, did not respond. The State followed up with questions

regarding the jurors' ability to be impartial and gave them an opportunity to bring up anything about a relationship with Featherston or any of the court officers, and again, Satterwhite did not speak up. When questioned individually, she stated there was no reason she could not be fair and impartial.

The trial took place on August 30 and 31. Sergeant Justin Crane, a criminal investigator with the Hempstead County Sheriff's Office testified first. He explained that on July 9, 2020, he was stationed at the South View Apartments conducting surveillance on an apartment suspected to be a place methamphetamine was sold. Around 4:00 p.m., Sergeant Crane was getting ready to leave when he saw a white BMW driven by Featherston enter the apartment complex. Crane waved Featherston down, and Sergeant Gary Dorman asked to speak with Featherston. Featherston parked the car, rolled up his window, stepped out of the vehicle, and locked the doors. Featherston consented to a search of his person, and officers found $719, which Featherston explained came from an ATM in town, and two plastic sandwich bags containing suspected methamphetamine residue. Featherston was arrested for possession of drug paraphernalia. He denied consent to search his vehicle. A drug-detection dog conducted a "free sniff" around the vehicle and alerted to the driver's-side door. The officers searched the vehicle and found a box of chicken in the front passenger's seat that contained a sandwich bag holding approximately eighty-eight suspected ecstasy tablets. Next to the box of chicken, officers found an eye-glass case containing a pipe with what Sergeant Dorman identified as methamphetamine residue throughout the stem. Further items found in the search included two cell phones, a box of small plastic bags, and

"shake" (methamphetamine particles) in the seams of the driver's seat. Photographs of the parking lot taken during the investigation were admitted into evidence, showing that there was a group of around eight people near the car. Sergeant Crane testified that no one was allowed in the car where the evidence was found.

Jennifer Shirley, a forensic chemist with the Arkansas State Crime Laboratory, testified that she analyzed the evidence gathered from Featherston's car and person. Shirley stated that the total weight of the pills found in the box of chicken was 11.5417 grams, and she tested a 5.7705-gram sample. Shirley testified that the pills were a combination of methamphetamine and caffeine, and the ratio of the substances was not discerned in testing. Shirley testified that she was not asked to test the residue in the pipe.

Featherston moved for a directed verdict, challenging the sufficiency of the evidence. Regarding possession of drug paraphernalia, Featherston asserted that there was inconsistent testimony regarding whether there was methamphetamine residue on the pipe; thus, there was not sufficient evidence that the pipe was used to ingest methamphetamine. Featherston asserted that the State did not prove that 11.5 grams of methamphetamine was found in his car because the chemist testified that the ratio of methamphetamine to caffeine was unknown, and she tested roughly only half of the drugs seized. He argued that the State did not prove intent to deliver because of the lack of drug-distribution accoutrements found during the search. There were no scales or "evidence to suggest that he had anything to package the methamphetamine." Regarding constructive possession of methamphetamine, Featherston argued that here there was no testimony

that it was proven beyond a reasonable doubt that the defendant exercised care, control and management over the contraband. It was testified to that the meth was not in plain view. There were no fingerprints or other kind of Forensic evidence taken. There was no proof given by the officers about whose box of chicken it was. And I believe that the State hasn't excluded the other reasonable hypothesis which it could be a previous passenger's. There was no testimony that anybody saw him with MDMA -- I'm sorry, the tablets. There was no testimony that the officers saw Mr. Featherston with the tablets or that he even tried to conceal it. There was no indication that he acted suspiciously.

Featherston argued that the number of people surrounding the crime scene constituted reasonable doubt. Regarding the paraphernalia charge, Featherston asserted that the State has not proved beyond a reasonable doubt that he possessed drug paraphernalia with the purpose to ingest methamphetamine because tablets are not ingested through smoking a pipe. He argued that there are legal uses for the pipe, and there was no expert testimony concerning its use. The directed-verdict motion was denied.

The defense called no witnesses and renewed its motion for a directed verdict. Featherston stated that there was insufficient evidence that he possessed methamphetamine. He asserted that

[t]he possession is as alleged by the State, although not by name is constructive rather than physical possession. The tablets or paraphernalia were not in plain view. There was not any further evidence to connect my client with the paraphernalia or the tablets. There was no kind of a receipt recovered by the officers or presented by the State.

Featherston argued that no one saw him with the tablets, and there was no evidence that he attempted to conceal the tablets or the paraphernalia. He contended that there was no effort to secure the crime scene, and an unknown number of people were near the vehicle. Regarding intent to deliver, Featherston asserted that there were no tools of delivery,

4

including a means to weigh or separate the tablets, or any evidence of drug-related transactions taking place. As to possession of drug paraphernalia, Featherston restated that the methamphetamine recovered was in tablet form, and not crystals that are smoked; thus, the pipe could have been used to smoke tobacco or marijuana.

He asserted that the officers "did not mention in their Affidavit for Warrant of Arrest or their narrative that they found methamphetamine residue in the pipe, it was only yesterday that they mentioned -- well there was methamphetamine residue in the pipe." The motion was denied, and the jury found Featherston guilty on both charges.

After the verdict was delivered, the following colloquy occurred:

MR. POTTER:    My client has told me just now that a female juror, number two, approached him on Monday night and said some things to him. I don't know if right now is -- all I know is what he's told me this instance and I haven't had a chance to investigate the varsity (sic) of those claims but I'm bringing it to your attention. And that's just what he's told me.

MR. HALE:    Told you after the verdict or before?

MR. POTTER: After.

THE COURT:    No. You can make some kind of posttrial motion. I do not believe that that occurred.

MR. POTTER: Yes, Your Honor

The jury delivered the sentences, and Featherston was sentenced by the court to fifty years' imprisonment in the Arkansas Department of Correction as a large habitual offender pursuant to Ark. Code Ann. § 5-4-501(b) (Repl. 2016), with a sentencing enhancement for possessing methamphetamine within one thousand feet of certain facilities.

On October 20, 2022, Featherston filed a motion for a new trial based on juror misconduct. In his motion, he asserted that on Monday, August 29, 2020, *after* jury selection had concluded, a woman approached him at the convenience store and told him that she could "help or hurt" him. He did not respond to her. Featherston did not recognize the woman as Juror #2 until the jury was deliberating on guilt or innocence. Featherston asserted that Juror #2 misled the court by not disclosing any knowledge of the case or Featherston *during* jury selection. Counsel "immediately" notified the court, and the court "declined to intervene." Featherston asserted that he believed Juror #2 influenced the jury to convict him because he did not respond to her proposition. Featherston also argued that the evidence was insufficient to uphold his convictions.

The hearing on the motion was held November 21, 2022. Juror #2 testified that her only contact with Featherston was on "the second day," a Tuesday, and the first day of testimony. She testified that she was walking back to the courthouse as a recess was ending, and Featherston asked her if she had a lighter. She testified that she responded, "I don't smoke," and there was no other contact or discussion between them. Satterwhite stated that she knew of and frequented the convenience store Featherston identified in his motion for a new trial, but she did not remember seeing him there, and she never spoke to him before the first day of trial when he asked her for a lighter. Featherston took the stand and testified that that on Monday, after the jury had been selected, Juror #2 entered the convenience store and stood in line behind him to buy a vape cartridge. He offered to let her go in front of him, and she said, "No, you go first, we can help each other." He testified that he

responded, "Help each other." Featherston stated that he was at the convenience store for about an hour playing slot machines, and when he left, she followed him outside and said, "We can still help each other." After that, she sat in her vehicle until he left. Featherston remembered thinking he knew her from somewhere but could not place her. On Wednesday, the last day of the trial, she approached him outside the courthouse, and he asked her for a light. Featherstone stated she said, "You know I vape." That is when he recognized her and realized she was offering him a bribe to influence the jury.

The court denied the motion for a new trial and found that Featherston's testimony was not credible. The court noted that Featherston did not raise the allegation until after the guilty verdict was returned, and Juror #2's version of the events was more credible. Featherston timely filed his notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Sufficiency of the Evidence

On appeal, Featherston asserts that the State failed to prove that he constructively possessed (1) methamphetamine with the purpose to deliver and (2) the drug paraphernalia.

A motion for a directed verdict at a jury trial is a challenge to the sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1. In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all the evidence. A motion for directed verdict shall state the specific grounds therefor. Ark. R. Crim. P. 33.1(a). Failure to challenge the sufficiency of the evidence at the times and in the manner required above will constitute a waiver of any question pertaining to the

7

sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. If a specific basis was articulated in the original directed-verdict motion, however, a general renewal at the close of the evidence is sufficient to preserve the issue for appeal. *Jackson v. State*, 2011 Ark. App. 528, at 4, 385 S.W.3d 394, 396–97.

The State correctly contends that Featherston did not raise the argument regarding constructive possession of drug paraphernalia in his initial directed-verdict motion at the close of the State's case. Instead, Featherston argued that the State failed to prove that the pipe contained methamphetamine residue; thus, it could have been used to legally smoke tobacco or marijuana. When Featherston renewed his motion at the close of all the evidence, he specifically challenged the sufficiency of the evidence of constructive possession of the paraphernalia. Because Featherston did not argue below in his initial motion that there was insufficient evidence of constructive possession of the pipe, we are unable to reach this point on appeal. *See Benton v. State*, 2020 Ark. App. 223, at 15, 599 S.W.3d 353, 362.

We now turn to the sufficiency of the evidence that Featherston possessed methamphetamine with the intent to deliver. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Foster v. State*, 2015 Ark. App. 412, at 4, 467 S.W.3d 176, 179. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 467 S.W.3d at 179. We view the evidence in the

light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*, 467 S.W.3d at 179.

A person commits possession of methamphetamine with the purpose to deliver, a Class A felony, if he "possessed ten grams (10g) or more but less than two hundred grams of methamphetamine . . . by aggregate weight, including an adulterant or diluent." Ark. Code Ann. § 5-64-420(b)(3) (Repl. 2016)

The State need not prove actual possession of contraband to prove possession; it may be proved by constructive possession, which is the control or the right to control the contraband. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). Constructive possession can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839. Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the circumstantial evidence excludes every other hypothesis is left to the jury to decide. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491.

Here, the car belonged to Featherston, and he was the driver and sole occupant of the car.[1] This court has held that proof that the defendant is the sole occupant of the car is evidence that he or she exercised dominion and control over the contraband. *See Bryant v.*

---

[1]It is undisputed that the pills seized from Featherston's car weighed 11.5 grams, which exceeds the 10-gram requirement set forth in the statute.

*State*, 2023 Ark. App. 215, at 7; *Keys v. State*, 2021 Ark. App. 469, at 8, 636 S.W.3d 835, 840; *Dyas v. State*, 2020 Ark. App. 52, at 3, 593 S.W.3d 55, 57.

Also, the contraband was found in the front passenger's seat within Featherston's reach and in close proximity to where he had been sitting in the vehicle, which indicates that he had dominion and control over the drugs. *See id.*

Purpose to deliver may be proved if there is evidence that the person possesses (1) the means to weigh, separate, or package methamphetamine; (2) a record indicating a drug-related transaction; or (3) the methamphetamine is separated and packaged in a manner to facilitate delivery. Ark. Code Ann. § 5-62-420(a)(1)–(6).

A box of sandwich bags was found in Featherston's car. Sandwich bags are a well-known tool for packaging and distributing drugs. *See Singleton v. State*, 2011 Ark. App. 145, at 2, 381 S.W.3d 874, 875; *Safley v. State*, 32 Ark. App. 111, 116, 797 S.W.2d 468, 471 (1990); *Sanchez v. State*, 288 Ark. 513, 516, 707 S.W.2d 310, 312 (1986). Accordingly, we hold that there was sufficient evidence for the jury to find Featherston guilty of possessing methamphetamine with the intent to deliver.

### B. Motion for a New Trial

Featherston challenges the court's denial of his motion for a new trial based on juror misconduct. Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). This court will not presume prejudice in such situations. *Id.* Jurors are presumed unbiased and qualified to serve, and the burden

is on the appellant to show otherwise. *Id.* Whether prejudice occurred is a matter for the sound discretion of the circuit court. *Id.*

For the first time on appeal, Featherston argues that the circuit court's failure to immediately investigate the allegation of juror misconduct

> allowed a biased juror to continue to sit on the jury and deliberate. . . . The trial judge in this case abused his discretion and abdicated that responsibility by not weighing and assessing anything. Had the Court immediately investigated the alleged misconduct, as was done in [*U.S. v. Resko*, 3 F.3d 684 (3d Cir. 2000)], the jurors could have been questioned briefly and, if necessary, Satterwhite could have been excused, an alternate could have been seated in her place, or a mistrial could have been declared and new trial ordered. Instead, appellant was sentenced by this jury and had to wait nearly three (3) months for a hearing on his Motion for New Trial. The harm in delaying the investigation into juror misconduct results in the appearance of impropriety, faded memories, and deteriorating evidence.

In his motion for a new trial, Featherston alleged that Juror #2 attempted to bribe him, and he did not respond. He believed that because he did not accept her offer, she influenced the jury against him. When reciting the facts leading up to his allegation of juror misconduct, Featherston stated that counsel "alerted the Court immediately after he was notified by Defendant of the situation. The Court declined to intervene." Featherston did not argue in his motion for a new trial that the court erred by not investigating immediately; thus, we are barred from reaching the issue now. *See Holloway v. State*, 363 Ark. 254, 268, 213 S.W.3d 633, 643 (2005).

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Jacob Stem Potter*, for appellant.

11

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.