Cite as 2026 Ark. App. 251

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-25-385

|  |  |
|---|---|
|  | **Opinion Delivered** April 22, 2026 |
| GLENN MICHAEL CARRUTH<br>APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-24-101] |
| V. |  |
|  | HONORABLE BRENT HALTOM, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**KENNETH S. HIXSON, Judge**

Appellant Glenn Michael Carruth appeals after he was convicted by a Miller County Circuit Court jury of three counts of rape. He was sentenced as a habitual offender to serve an aggregate of 1800 months' incarceration. On appeal, appellant generally argues that the circuit court erred in denying his motion for directed verdict and challenges the circuit court's jurisdiction and venue. We affirm appellant's convictions but remand for the limited purpose of correcting the sentencing order.

I. *Relevant Facts*

Appellant sexually abused Minor Victim (MV) between the years 2014 and 2016. At that time, appellant was dating MV's mother, and MV was between the ages of four and six years old. MV did not tell anyone about the sexual abuse until years later. Appellant was

subsequently arrested and charged by amended felony information with three counts of rape, a Class Y felony, in violation of Arkansas Code Annotated section 5-14-103 (Supp. 2023). The State further maintained that appellant's sentence should be enhanced because he is a habitual offender pursuant to Arkansas Code Annotated section 5-4-501 (Supp. 2023). A jury trial was held on December 9–10, 2024.

MV was fifteen years old at the time of trial. MV explained that her mother, Mandy Harrison, dated appellant when MV was between the ages of four and six years old. During that time, MV lived with her mother on the Texas side of Texarkana, and appellant lived on the Arkansas side of Texarkana with his mother and father. While the two were dating, Ms. Harrison would take MV with her to appellant's house to spend anywhere between one night and a full week.

MV testified that appellant sexually abused her when she was at his house in either the living room or his mother's bedroom. She said that appellant would touch her vagina with his fingers and his tongue. She said that "[h]e would put his middle finger and his ring finger inside of [her]. And he would just, like, move his hands around on the outside." She also said that in a couple of instances, she would "sit and watch [appellant] play on his computer, and then he would just change the browser to a porn[ography] website." When she tried to walk away, he made her sit back down. MV went on to explain that appellant had taken her to his mother's bedroom and digitally penetrated her on at least five occasions. He would take her pants and underwear off but never her shirt. MV testified that "[i]t hurt really bad" when appellant put his finger in her vagina and that "[she] told him it hurt and

2

he wouldn't stop." MV testified on another occasion that appellant took her to his mother's bedroom, tied one of her wrists to the bedframe, took off her pants, and put his tongue on and inside her vagina. MV said it "made [her] feel disgusting, like [she] wasn't worth anything."

MV testified that there was one final instance of sexual abuse that occurred at her mother's house on the Texas side of Texarkana. She was in bed with her mother and appellant before going to sleep. Appellant grabbed MV's hand, put it in his underwear, and made her touch his penis. When her mother reached over and felt her hand, Ms. Harrison yelled at appellant to leave. MV admitted that since that time, she had experienced depression and had attempted to commit suicide.

On cross-examination, MV admitted that she did not tell anyone about the sexual abuse until 2017, when she told her cousin in North Dakota after moving in with her. In 2020, MV told her counselor, who contacted the authorities in Arkansas. Shortly thereafter, MV moved back in with her mother in Texas. MV further testified that although there were some instances of sexual abuse that had occurred at her mother's house in Texas, the sexual abuse had occurred every time she was at appellant's house in Arkansas. She explained that her mother would get "high on drugs" and fall asleep, which gave appellant the opportunity to sexually abuse her.

At trial, Ms. Harrison confirmed that she had dated appellant between 2014 and 2016. She admitted that she had not witnessed any inappropriate behavior when she was at appellant's house, but she also admitted that she had taken methamphetamine many times

3

while she was there, leaving appellant to care for MV. Ms. Harrison confirmed MV's testimony about the final incident that occurred in Texas that led her to demand that appellant leave her home.

Arkansas State Police Investigator David Hampton and Texarkana, Arkansas, Police Detective Corvette Phillips testified regarding their investigation. Both of them explained that they had watched MV's interview with Kristy Kirkwood that occurred at Texarkana's Child Advocacy Center (CAC). Detective Phillips testified that during the interview, MV had accused appellant of raping her, and as a result, Detective Phillips visited appellant's house in Texarkana, Arkansas, which is in Miller County. After appellant was arrested, Detective Phillips interviewed him. During that interview, appellant denied having raped MV but admitted that MV had her hand on his penis on more than one occasion.

Kristy Kirkwood testified that she had interviewed MV at the CAC. She outlined her qualifications and described the interview room. She also discussed some of the interview techniques and the details MV had provided about the rapes.

After the State rested, appellant's counsel made the following motion for directed verdict:

> Judge, I make a motion for directed verdict on all three counts. Count one, rape, the State has failed to prove with sufficiency that Glenn Michael Carruth unlawfully and knowingly engaged in sexual intercourse, or deviant sexual activity with [MV], who was less than 14 years of age. State has failed to prove the essential elements in the case, in each count; one, two and three. And we'd ask that the Court enter a directed verdict against all counts.

The State disagreed, and the circuit court denied the motion.

4

Appellant testified on his own behalf and denied that he ever touched MV sexually, inserted his fingers into MV's vagina, inserted his tongue into MV's vagina, forced MV to watch pornography, or forced MV to touch his penis.

After the defense rested, and at the conclusion of all evidence, appellant's counsel renewed his motion for directed verdict and specifically argued the following:

> Your Honor, I renew my motion for directed verdict calling the defense case in chief. The State has failed to prove with any sufficiency counts one, two, and three of rape that occurred in Miller County, Arkansas, where Glenn Michael Carruth knowingly engaged in sexual intercourse, or deviant sexual activity with [MV], who is under the age of 14 years. We ask that the Court enter directed verdict on all three counts for the State's failure to prove a prima facia case. It should not go to the jury.

The circuit court denied appellant's motion. The jury found appellant guilty on all three counts of rape. During the sentencing phase, the State introduced evidence of appellant's other prior convictions to prove that he is a habitual offender. The jury recommended that he be sentenced as a habitual offender to serve fifty years' imprisonment on each count, to be served consecutively, which the circuit court imposed. This appeal followed.

## II. *Standard of Review*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one

5

way or the other without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra.*

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

III. *Sufficiency of the Evidence*

We must address appellant's sufficiency arguments first because double-jeopardy considerations require this court to review a challenge to the sufficiency of the evidence before we review the other issues on appeal. *See Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510; *Dean v. State*, 2021 Ark. App. 182; *Chavez v. State*, 2018 Ark. App. 527, 564 S.W.3d 268. In his lengthy brief on appeal, appellant makes several arguments as to why he contends

that the circuit court should have granted his motions for directed verdict, including but not limited to his assertions that the State failed to prove that the charged rapes had occurred at appellant's house in Arkansas and that MV's testimony was not credible and conflicted with the testimony offered by other witnesses and with her own statements made during her interview at the CAC.[1] However, none of appellant's sufficiency arguments are preserved for our review.

Rule 33.1 of the Arkansas Rules of Criminal Procedure provides the following in relevant part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied

---

[1]To the extent appellant is also challenging the admissibility of Ms. Kirkwood's testimony as an expert witness as improper bolstering of MV's testimony, his argument is not preserved for our review because he did not make a contemporaneous objection to the circuit court. Our appellate courts have repeatedly held that arguments not raised at trial will not be addressed for the first time on appeal. *Frye v. State*, 2009 Ark. 110, 313 S.W.3d 10. Moreover, parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of their objections as presented at trial. *Id.*

for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

It is well settled that Rule 33.1 is strictly construed. *Richardson v. State*, 2020 Ark. App. 25, 595 S.W.3d 1. A general motion does not satisfy the requirements of specificity mandated in Rule 33.1. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. The reason underlying this rule is that when specific grounds are stated and the proof is pinpointed, the circuit court can either grant the motion or allow the State to reopen its case and supply the missing proof. *Scott v. State*, 2015 Ark. App. 504, 471 S.W.3d 236. Our appellate courts have been steadfast in our holdings that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels*, *supra*. Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.*

Here, appellant's counsel simply argued in his initial motion for directed verdict that the "State has failed to prove the essential elements in the case, in each count; one, two and three." This general motion does not satisfy the requirements of specificity mandated in Rule 33.1. Because appellant did not include any of his specific sufficiency arguments on appeal in his initial motion for directed verdict, they are not preserved for our review. *See Pinell v. State*, 364 Ark. 353, 219 S.W.3d 168 (2005); *Palmer v. State*, 2025 Ark. App. 236; *Featherston v. State*, 2024 Ark. App. 207, 687 S.W.3d 150; *Breshears v. State*, 2023 Ark. App. 442, 675 S.W.3d 493; *Daniels*, *supra*. Accordingly, we affirm on this point.

IV.  *Lack of Venue and Jurisdiction*

8

To the extent appellant is independently arguing for the first time on appeal that the circuit court lacked jurisdiction and venue pursuant to Arkansas Code Annotated section 5-1-111 (Repl. 2013), we address those issues. The Arkansas Supreme Court discussed the difference in venue and jurisdiction in *Davis v. Reed*, 316 Ark. 575, 577–78, 873 S.W.2d 524, 525 (1994):

> To begin with[,] venue and jurisdiction, though sometimes used interchangeably, are two distinct legal concepts. Venue is the geographic area, like a county, where an action is brought to trial. *Black's Law Dictionary* 1557 (6th ed. 1990). Jurisdiction is the power of a court to decide cases and presupposes control over the subject matter and parties. *Black's Law Dictionary* (6th ed. 1990). This court has stated that venue may be waived in a criminal case within the territorial boundaries of the judicial district. . . . Since Davis entered his plea in Jefferson County, a contemporaneous objection was required to raise the issue of improper venue and preserve it for appeal. . . . Any venue argument which Davis might have had was waived, and his objection cannot be raised for the first time on appeal.

Similarly, here, appellant did not object to venue, nor did he specifically include lack of venue in his motions for directed verdict. Therefore, appellant waived his objection to venue, and the issue of venue is not preserved on appeal.

That leaves us with the issue of whether the circuit court had jurisdiction. Jurisdiction is one of the four elements that must be proved beyond a reasonable doubt to convict someone of an offense. *See* Ark. Code Ann. § 5-1-111(a); *King v. State*, 361 Ark. 402, 206 S.W.3d 883 (2005). However, the State is not required to prove jurisdiction unless evidence is admitted that affirmatively shows that the court lacks jurisdiction. Ark. Code Ann. § 5-1-111(b). Our supreme court has further explained that before the State is called on to offer any evidence on the question of jurisdiction, there must be positive evidence that the offense

occurred outside the jurisdiction of the court. *DeWitt v. State*, 306 Ark. 559, 815 S.W.2d 942 (1991).

We hold that there was not positive evidence that the charged crimes occurred outside the jurisdiction of the circuit court. While separate and distinct criminal conduct may have occurred in Texas, that does not mean that affirmative proof was established that the circuit court lacked jurisdiction over appellant's convictions for rapes that occurred in his house in Arkansas. *See DeWitt, supra.* Here, MV specifically testified that appellant had taken her to his mother's bedroom and digitally penetrated her while there on at least five occasions. She further testified that on another occasion in appellant's house, appellant had put his tongue on and inside her vagina. No evidence was presented to suggest that appellant's house was located anywhere but in Miller County. In fact, Detective Phillips confirmed that appellant's house was located in Texarkana, Arkansas, which is in Miller County. Thus, the State was not required to prove jurisdiction, and we must affirm appellant's convictions. *See* Ark. Code Ann. § 5-1-111(b); *Bynum v. State*, 2017 Ark. App. 41, 511 S.W.3d 860.

V. *Sentencing Order*

Finally, we note that there is a clerical error in the sentencing order. Appellant was charged as a habitual offender; appellant's prior convictions were introduced at the sentencing hearing; and the jury sentenced appellant as a habitual offender. However, the box that would indicate that appellant was sentenced as a habitual offender is not checked on the sentencing order. The circuit court is free to correct a clerical error to have the judgment speak the truth. *Battles v. State*, 2024 Ark. App. 198; *Carter v. State*, 2019 Ark.

App. 57, 568 S.W.3d 788.  Thus, we affirm appellant's convictions but remand to the circuit court with instructions to correct the sentencing order.

Affirmed; remanded to correct the sentencing order.

KLAPPENBACH, C.J., and GLADWIN, J., agree.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.