Cite as 2020 Ark. App. 223

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-19-742

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 8, 2020 |
| JESSE BENTON | | APPEAL FROM THE BOONE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 05CR-18-222] |
| V. | | |
| | | HONORABLE GORDON WEBB, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Jesse Benton appeals after he was convicted by a Boone County Circuit Court jury as a habitual offender of battery in the first degree, battery in the second degree, domestic battery, and resisting arrest. He was sentenced to serve an aggregate of 288 months' imprisonment. On appeal, appellant challenges the sufficiency of the evidence for each of his convictions. We affirm.

### I. *Relevant Facts*

Appellant was arrested and charged as a habitual offender of battery in the first degree, battery in the second degree, domestic battery, and resisting arrest. These charges all stemmed from events that occurred at approximately 1:30 a.m. on June 24, 2018, after law enforcement received a domestic-disturbance complaint. At a jury trial, the State presented the testimony of the three law enforcement officers and the treating physician that tended to the injuries that were sustained during the incident. Additionally, body-camera footage

from two of the officers was played for the jury without objection. Based on all the evidence introduced at trial, the following is a summary of the chain of events that occurred.

On June 24, 2018, Corporal Gregory Siemuller, Officer John Morgan, and Officer Ryan Guffy, all of the Harrison Police Department, responded to a domestic-disturbance complaint at the home of Virginia Benton, appellant's mother, who was sixty-four years old at the time of the incident. Officer Morgan was the first to arrive at the scene followed by Officer Guffy and then Corporal Siemuller. When the officers arrived and found Ms. Benton sitting on the front porch, she appeared disheveled, her left leg was swollen, and blood was running down her left arm. She informed the officers that appellant was breaking things in the house. She stated that appellant was bipolar but was not on his medication. According to Officer Guffy's body-camera footage that was played for the jury, Ms. Benton told Officer Guffy that appellant was "driving [her] nuts," that they had been fighting, and that she thought she injured her elbow during the fight with appellant. She later told Officer Siemuller that her foot was injured when the bathroom door was shut on it. She further explained that when she fell, appellant would not help her and that she had to crawl to get up.

Officers Morgan and Guffy entered the residence and attempted to speak with appellant while Corporal Siemuller initially remained outside with Ms. Benton. Officer Morgan asked appellant for identification. Appellant attempted to go to the kitchen to get his identification, but Officer Morgan prevented him from entering because there were several knives in the room. At this point, Officer Guffy, who had been surveying the other rooms in the house, informed Officer Morgan that there was a large knife in one of the

2

bedrooms. Appellant then told the officers that he did not have any weapons on him, became aggressive and agitated, and removed all his clothes. Appellant attempted to push past Officer Guffy and enter the bedroom where the large knife was located. Officer Guffy testified that he attempted to stop appellant both verbally and physically; however, appellant did not stop. Officer Guffy shoved appellant against the wall in an attempt to detain him, but appellant fought back.

Officer Morgan attempted to assist Officer Guffy in detaining appellant. However, appellant placed his hands around Officer Morgan's throat. Officer Morgan admitted he punched appellant to break free, but then appellant wrapped his arm around Officer Morgan's neck pulling Officer Morgan down on the floor on top of him. At that point, appellant began to use his fingers to dig at Officer Morgan's eyes. During the scuffle, appellant managed to remove Officer Morgan's K-9 leash and attempted to strangle him with it.

Corporal Siemuller, who entered the home to assist by this point, and Officer Guffy attempted to use their stun guns on appellant to make him stop fighting, but neither was able to effectively make contact. During that time, appellant kicked Officer Guffy twice in the face. Corporal Siemuller testified that appellant's face was mostly looking toward the officers during the struggle. Once the officers had appellant in handcuffs, he threatened to "stomp" their heads and said, "[B]etter pray homie." Appellant continued to try to escape the handcuffs until other officers arrived to assist.

Appellant, Officer Morgan, Officer Guffy, and Ms. Benton all went to the hospital where they were examined and treated for any injuries by Dr. Trey Powell. Dr. Powell

3

testified that appellant had a blood alcohol level of .162 and that the legal level of intoxication is .08. Additionally, appellant tested positive for marijuana. Dr. Powell explained that he gave appellant a shot to help calm him down, but appellant did not have any significant injuries or trauma on physical exam. According to Dr. Powell, Ms. Benton was sixty-four years old and presented with a contusion and tenderness on her foot. She told him that her foot had been "slammed" in a door. She also had an abrasion or cut on her left arm. Officer Morgan suffered from a corneal abrasion on his right eye. Officer Guffy had a broken nose along with fractures to his sinus and orbital bones. Officer Guffy subsequently had to have surgery to fix the injuries. Officer Guffy testified that the surgeon had to shave part of the right side of his nose to allow him to breathe out of his right nostril. Two stents were placed in his sinus area. After his sinus bone healed, the surgeon "went in with a claw and pulled down my eye and put in a titanium plate with some screws to hold my eye from sinking back into my skull." Although the plate is still there, the stents were eventually removed. He had to miss work for over a month and then was allowed to return only to light duty for another month. Moreover, at the time of the trial, Officer Guffy testified that he continued to have numbness in his upper lip and double vision in his right eye as a result of the incident.

The jury found appellant guilty of first-degree battery of Officer Guffy, second-degree battery of Officer Morgan, second-degree domestic battery of Ms. Benton, and resisting arrest. He was sentenced to seventeen years' imprisonment on the first-degree battery, seven years each on second-degree battery and second-degree domestic battery, and one year in the county jail for resisting arrest. The circuit court imposed the sentence for

4

second-degree battery consecutively to the sentence for first-degree battery. It imposed the sentence for second-degree domestic battery and resisting arrest concurrently. This appeal followed.

## II. *Standard of Review*

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Hinton v. State*, 2015 Ark. 479, 477 S.W.3d 517. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* The sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Hoyle v. State*, 371 Ark. 495, 502, 268 S.W.3d 313, 318 (2007). Substantial evidence is evidence which is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Hinton*, *supra*. Finally, the credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty

5

in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

III. *Sufficiency of the Evidence to Sustain the First-Degree-Battery Conviction*

On appeal, appellant first argues that the State failed to prove that he had the required mental state to commit battery in the first degree against Officer Ryan Guffy. He specifically argues that the State failed to prove the culpable mental state required to find that he acted under circumstances manifesting extreme indifference to the value of human life. He argues that he was intoxicated in the privacy of his own home and claims that he was trying to be compliant with the officers despite them giving mutually exclusive commands. He further claims that he did not display an intent to harm or disrespect the officers but that it was the officers that escalated the situation and attacked him for no reason. Thus, he claims that the circuit court erred in not sustaining his motion for directed verdict as to battery in the first degree against Officer Guffy. We disagree.

In relevant part, a person commits battery in the first degree if the "person causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-13-201(a)(3) (Supp. 2019). "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21) (Repl. 2013). Recently, in *Turner v. State*, we explained the following regarding mental state required to commit first-degree battery:

> A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime.

6

*Suchey v. State*, 2016 Ark. App. 225, 490 S.W.3d 320. The phrase "circumstances manifesting extreme indifference to the value of human life" indicates that "the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused"; thus, extreme indifference is "in the nature of a culpable mental state and therefore is akin to intent." *Rongey v. State*, 2018 Ark. App. 617, at 2–3, 566 S.W.3d 161, 164. Circumstances manifesting extreme indifference require "deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result," *Brown v. State*, 2014 Ark. App. 79, at 2, and the circumstances "must by necessity be more dire and formidable in terms of affecting human life." *Estacuy v. State*, 94 Ark. App. 183, 186, 228 S.W.3d 567, 570 (2006) (citing *Harmon v. State*, 340 Ark. 18, 27, 8 S.W.3d 472, 478 (2000)). Furthermore, "it involves actions that create risk of death, which evidence the mental state to engage in some type of life-threatening activity against the victim." *Williamson v. State*, 2011 Ark. App. 73, at 5, 381 S.W.3d 134, 137.

*Turner*, 2019 Ark. App. 476, at 6, 588 S.W.3d 375, 378–79.

In *Williamson v. State*, 2011 Ark. App. 73, 381 S.W.3d 134, we held that substantial evidence supported first-degree battery where the defendant hit and kicked the victim in the face, knocking out two teeth. The defendant had argued that even if she had kicked the victim in the face, it was not an act of serious physical injury under circumstances manifesting extreme indifference to the value of human life. We disagreed and specifically noted that although the victim's ultimate injuries may not have been life threatening, the State correctly noted that is not the sole standard for a serious physical injury under Arkansas Code Annotated section 5–1–102(21). The victim was disfigured from that attack by losing his two front teeth and would have to undergo oral surgery to replace his teeth when he turned eighteen years old. We held that the evidence was sufficient to show that the defendant caused serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life as defined under Arkansas Code Annotated sections 5-13-201(a)(3) and 5-1-102(21). The same is true here.

7

Here, the evidence showed that appellant acted erratically. After he had taken off all his clothes, appellant attempted to enter the bedroom where a large knife was located. He disregarded verbal commands to stop and became combative with Officers Morgan and Guffy. He attempted to choke Officer Morgan, first with his hands and then with a K-9 leash. The body-camera footage and testimony revealed that appellant kicked Officer Guffy twice in the face while facing toward him. Although Corporal Siemuller and Officer Guffy had attempted to stun appellant, neither had made the requisite contact at the time appellant kicked Officer Guffy. As a result, Officer Guffy sustained serious physical injuries. Appellant broke Officer Guffy's sinus bone and orbital bone, requiring surgery and a titanium plate to be permanently placed in Officer Guffy's face. Moreover, Officer Guffy continued to have double vision and numbness in his upper lip as a result. We hold that the jury weighed the credibility of the witnesses and properly concluded that appellant committed first-degree battery against Officer Guffy. Because the State presented substantial evidence from which the fact-finder could find first-degree battery, the circuit court did not err by denying his motion for a directed verdict. Thus, we affirm on this point.

IV. *Sufficiency of the Evidence to Sustain the Second-Degree-Battery Conviction*

On appeal, appellant states that he is arguing, as he did below, that the State failed to prove that he had the required mental state to commit battery in the second degree against Officer John Morgan. However, appellant's entire argument under this point is as follows:

> Jesse Benton adopts the facts heretofore in support of his argument for the charges in which Officer Morgan was a victim. Jesse Benton was charged with Battery in the Second Degree against Officer Morgan. *See* Ark. Code Ann. 5-13-202(a)(4)(A)(i); § 5-2-202(2) (Repl. 2013); and § 5-1-102(14) (Repl. 2013), *supra*. Again, in *Caldwell v. State*, 2018 Ark. App. 588, a young man refused a lawful instruction form jailers.

Here, Jesse Benton is complying with instructions of law enforcement. Upon a review of the video, Officer Morgan began punching Jesse Benton first, to which Jesse Benton responded with clawing, as well as trying to get away. Furthermore, there is no additional evidence that Jesse Benton attempted to assault Officer Morgan. *See* Ark. Code Ann. § 5-13-206; Ark. Code Ann. § 5-3-201, *supra*. Therefore, any conviction for the lesser included offense of assault is not supported by the record evidence and should not be utilized by this Court to sustain a conviction.

Appellant fails to fully develop his argument on appeal in that he specifically fails to explain why the State did not prove that he had the required mental state to commit second-degree battery against Officer Morgan. This court will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. Neither conclusory statements nor allegations without factual substantiation are sufficient. *Id.* Moreover, he is bound by the scope of the directed-verdict motion made at trial, and all other arguments are not preserved for appellate review. *Savage v. State*, 2017 Ark. App. 261, 520 S.W.3d 706. Nevertheless, substantial evidence supports the jury's verdict.

In relevant part, a person commits battery in the second degree if the "person knowingly, without legal justification, causes physical injury to or incapacitates a person he or she knows to be . . . [a] law enforcement officer." Ark. Code Ann. § 5-13-202(a)(4) (Supp. 2019). Arkansas Code Annotated section 5-2-202(2) defines "knowingly" as follows:

A person acts knowingly with respect to:

(A) The person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or

(B) A result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result[.]

9

"Physical injury" means the "(A) Impairment of physical condition; (B) Infliction of substantial pain; or (C) Infliction of bruising, swelling, or a visible mark associated with physical trauma." Ark. Code Ann. § 5-1-102(14).

Here, the evidence indicated that appellant placed his hands around Officer Morgan's throat when Officer Morgan attempted to assist Officer Duffy in detaining appellant and preventing appellant from being able to retrieve a large knife that was in the bedroom. Officer Morgan admitted he punched appellant to break free, but then appellant wrapped his arm around Officer Morgan's neck pulling Officer Morgan down on the floor on top of him. At that point, appellant began to use his fingers to dig at Officer Morgan's eyes in a deliberate attempt to gouge his eye out. During the scuffle, appellant managed to remove Officer Morgan's K-9 leash and attempted to strangle him with it. As a result, Officer Morgan sustained a painful corneal abrasion on his eye. Under these facts, we hold that substantial evidence supports the verdict and affirm appellant's second-degree-battery conviction.

V. *Sufficiency of the Evidence to Sustain the Second-Degree Domestic-Battery Conviction*

Next, appellant argues that the State failed to prove that he had the required mental state to commit domestic battery in the second degree. He more specifically argues that the State failed to prove that he knowingly caused Ms. Benton's physical injuries because Ms. Benton did not testify. He further argues that "the doctor stating that 'her son slammed her door on her foot' does not rise to the level of intent to injure" because the door could have been slammed on her foot by mere happenstance or accident. Therefore, he concludes that

10

the jury would have to resort to speculation or conjecture to reach the conclusion that he intended to injure his mother. We disagree.

In relevant part, a person commits domestic battery in the second degree if the "person knowingly causes physical injury to a family or household member he or she knows to be sixty (60) years of age or older or twelve (12) years of age or younger." Ark. Code Ann. § 5-26-304(a)(4) (Repl. 2013).[1] As we stated above, this court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.* Although appellant asserts that the incident could have simply been an accident, the jury was permitted to draw on common knowledge and experience that this was not the case.

Here, it is undisputed that Ms. Benton is appellant's mother and was sixty-four years old at the time of the incident. Dr. Powell testified that Ms. Benton had suffered a contusion on her foot and an abrasion or cut on her left arm and that Ms. Benton told him that her

---

[1]Appellant erroneously cites Arkansas Code Annotated section 5-26-303(a) for his argument; however, that statute refers to first-degree domestic battery. Appellant was convicted of second-degree domestic battery as defined in Arkansas Code Annotated section 5-26-304(a)(4). Importantly, in contrast to appellant's assertion, second-degree domestic battery does not require "serious physical injury" but rather, simply "physical injury."

11

foot had been "slammed" in a door. Additionally, the officers testified regarding the circumstances surrounding the incident, and body-camera footage with Ms. Benton's statements to the officers were played for the jury at trial without objection. It is also undisputed that the officers were at the home in response to Ms. Benton's domestic-disturbance complaint. When the officers arrived and found Ms. Benton sitting on the front porch, she appeared disheveled, her left leg was swollen, and blood was running down her left arm. She informed the officers that appellant was breaking things in the house. She stated that appellant is bipolar but was not on his medication. According to Officer Guffy's body-camera footage that was played for the jury, Ms. Benton told Officer Guffy that appellant was "driving [her] nuts," that they had been fighting, and that she thought she injured her elbow during the fight with appellant. She later told Officer Siemuller that her foot had been injured when the bathroom door was shut on it. She further explained that when she fell, appellant would not help her and that she had to crawl to get up. Moreover, appellant's behavior with law enforcement was erratic and became combative. Under these circumstances, we hold that substantial evidence supports the verdict and affirm appellant's second-degree domestic-battery conviction.

VI. *Sufficiency of the Evidence to Support the Resisting-Arrest Conviction*

Appellant lastly argues that the State failed to prove that he engaged in conduct consistent with the charge of resisting arrest. "A person commits the offense of resisting arrest if he or she knowingly resists a person known by him or her to be a law enforcement officer effecting an arrest." Ark. Code Ann. § 5-54-103(a)(1) (Repl. 2016). "'Resists' means using or threatening to use physical force or any other means that creates a substantial

12

risk of physical injury to any person." Ark. Code Ann. § 5-54-103(a)(2). However, as the

State correctly explains, appellant's arguments are simply not preserved for our review.

Rule 33.1 of the Arkansas Rules of Criminal Procedure (2019) provides the

following in relevant part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

Therefore, in order for us to consider a sufficiency challenge, appellant must have preserved

the issue for appeal by moving for a directed verdict at the close of the evidence offered by

the prosecution and again at the close of all the evidence. *Jackson v. State*, 2011 Ark. App.

528, 385 S.W.3d 394; Ark. R. Crim. P. 33.1(a). Further, the motion must state the specific

grounds therefor, and the failure to challenge the sufficiency at the times and in the manner

prescribed by Rule 33.1 constitutes a waiver of the issue. Ark. R. Crim. P. 33.1(a), (c).

However, as long as a specific basis was articulated in the original directed-verdict motion,

a general renewal at the close of the evidence is sufficient to preserve the issue for appeal. *Jackson, supra*.

The problem here is that defense counsel's initial motion at the close of the State's case was manifestly a general challenge to the sufficiency of the evidence. After the State rested its case, defense counsel mentioned that appellant was also charged with resisting arrest and later generally requested the circuit court to dismiss "these charges" because the State had failed to meet its burden of proof. Although defense counsel stated specific grounds in challenging the three battery charges, he failed to point to any specific flaw in the State's case regarding resisting arrest nor did he specify any elements of the criminal acts that had not been proven. Because appellant's initial directed-verdict motion was nonspecific, appellant's sufficiency challenge to the resisting-arrest conviction is not preserved for this court's review. *See Pinell v. State*, 364 Ark. 353, 219 S.W.3d 168 (2005).

Moreover, even if preserved, substantial evidence supports the verdict. It is undisputed that appellant knew they were law enforcement officers. Appellant attempted to resist being handcuffed and became combative with the officers. Further, even after he was handcuffed, he threatened to "stomp" their heads and attempted to try to escape the handcuffs until other officers arrived to assist. As such, we affirm appellant's conviction for resisting arrest.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

14