Cite as 2024 Ark. App. 100

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-23-445

| | | |
|---|---|---|
| DERRICK NIXON | | Opinion Delivered February 14, 2024 |
| | APPELLANT | APPEAL FROM THE DESHA COUNTY CIRCUIT COURT [NO. 21ACR-22-9] |
| V. | | |
| | | HONORABLE ROBERT B. GIBSON III, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Derrick Nixon was charged by criminal information with murder in the first degree, battery in the first degree, and possession of a firearm by certain persons in the shooting death of Jason Jenkins and the shooting injury of Robert Washington. He was convicted by a Desha County Circuit Court jury of second-degree murder, first-degree battery, and possession of a firearm by certain persons and sentenced as a habitual offender with more than four felony convictions to two thirty-six years' imprisonment terms each for the second-degree murder and first-degree battery convictions and forty years for the possession-of-a-firearm-by-certain-persons conviction, with the sentences ordered to be served concurrently. On appeal, Nixon argues that the circuit court erred in denying his motions for directed

verdict for the second-degree murder and first-degree battery convictions.[1] Specifically, Nixon contends that the State failed to elicit sufficient evidence to negate his claim that he was justified in using deadly physical force. Because Nixon's argument is not preserved for appellate review, we affirm.

Nixon and Kenise Bryant were dating each other. Bryant and Washington were previously in a relationship, and they have seven children together. On January 13, 2022, Washington and Jenkins went to Bryant's house around 10:30 p.m. because Washington and Bryant needed to discuss an issue regarding their daughter. Washington knocked on the door, but there was no answer; as he was returning to his vehicle, Bryant answered the door and came outside. Washington returned to the sidewalk in front of Bryant's house, and the two began to argue. Nixon came out of the house at that time and stood beside Bryant; before he went outside, he retrieved Bryant's .22-caliber Ruger pistol out of her purse. Some of Bryant's and Washington's children followed Nixon outside. As the arguing continued, Jenkins got out of Washington's vehicle, walked over to stand beside Washington, and asked what was happening. Shortly after Nixon came outside, as Washington was attempting to make his children go back inside, Washington heard shots and turned to see Nixon shooting at Jenkins, who was running away. Nixon then pointed the gun at Washington and fired at him. Jenkins was hit by the gunfire and later died of his injuries; Washington was hit in his left hip by a bullet.

---

[1]Nixon made no argument below or on appeal regarding the sufficiency of the evidence to support his conviction for possession of a firearm by certain persons.

At trial, Nixon testified that he thought Jenkins, a man he had never met, had a gun. However, Bryant testified that she never saw either Washington or Jenkins with a gun that night; although she claimed Jenkins got out of the vehicle with his hands behind his back, Bryant admitted she never heard Jenkins threaten anyone. Nixon recounted that he had an altercation with Washington on New Year's Eve, and he claimed that Washington had followed him around town, trying to intimidate him. Nixon testified that Jenkins got out of Washington's vehicle wearing a ski mask; however, no ski mask was found at the scene, only a beanie that Washinton testified Jenkins had been wearing. No gun other than the one used by Nixon was found at the scene. Although he admitted he shot both Jenkins and Washington, Nixon testified that he had no intention to hurt anyone that night but that he felt it was necessary to defend himself. On cross-examination, Nixon agreed with the prosecutor's statement that walking outside with a loaded gun and killing a man that he had never met simply because he had his hands behind his back was reasonable. Nixon admitted that he never called the police to help with the situation.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. In reviewing a challenge to the sufficiency of the evidence, our standard of review is whether the jury's verdict is supported by substantial evidence; evidence, whether direct or circumstantial, is sufficient to support a conviction if it compels a conclusion and passes beyond speculation or conjecture. *Smith v. State*, 2022 Ark. App. 422, 654 S.W.3d 701. In making such a determination, we view the evidence in the light most favorable to the State, considering only the evidence that supports the guilty

verdict. *Id.* Witness credibility is for the jury alone to determine; the jury may believe all or part of any witness's testimony and may resolve inconsistencies of conflicts in the evidence. *Wray v. State*, 2023 Ark. App. 465, 678 S.W.3d 431.

A person commits second-degree murder if he or she "knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2013). A person commits first-degree battery if, "with the purpose of causing serious physical injury to another person, the person causes serious physical injury to any person by means of a deadly weapon." Ark. Code Ann. § 5-13-201(a)(1) (Supp. 2023).

Nixon's arguments on appeal concern whether the State negated his justification defense for shooting Jenkins and Washington. On appellate review, we must determine whether there was substantial evidence to support a finding of justification; justification is considered to be an element of the offense, and once raised, it must be disproved by the prosecution beyond a reasonable doubt. *Rouse v. State*, 2023 Ark. App. 558. A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence or is using or is about to use unlawful deadly physical force. Ark. Code Ann. § 5-2-607(a) (Supp. 2023). A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force by retreating, but he or she is not required to retreat if unable to retreat with complete safety. Ark. Code Ann. § 5-2-607(b)(1).

We hold that Nixon's justification argument is not preserved for our review because he failed to identify any specific element of justification in his directed-verdict motions that the State had failed to disprove. A motion for directed verdict shall state the specific grounds therefor. Ark. R. Crim. P. 33.1. In his initial directed-verdict motion regarding the murder charge, Nixon's counsel stated, "Another argument I would make on that, Your Honor, is the fact that the evidence shows that this incident occurred at his dwelling as defined in Arkansas Statute; that he did not go looking for Mr. Jenkins for the purpose of causing any kind of injury, rather, Mr. Jenkins came to him." As to first-degree battery, Nixon's counsel stated, "He was at his dwelling. They came to him and he was not looking for trouble." After the State presented rebuttal evidence, Nixon's counsel renewed his motions "on the grounds that the State has failed to make a prima facie case that my client acted with purpose. All the reasons I've already stated." None of these arguments address the elements of justification. In *Rouse*, *supra*, this court held that stating Rouse was "in fear for his life" and that he shot his victim "for the purpose of neutralizing a threat that he might oppose but not for the purpose of killing him" in his directed-verdict motion was insufficient to preserve Rouse's justification argument for appeal. Here, as in *Rouse*, Nixon failed to specify in his directed-verdict motions what elements of justification the State failed to prove; therefore, his arguments are not preserved for our review.

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

5

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.