Cite as 2025 Ark. App. 479

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-24-735

| | |
|---|---|
| BEAU ASHLEY BLISSITT<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered October 8, 2025<br><br>APPEAL FROM THE DESHA COUNTY CIRCUIT COURT<br>[NO. 21ACR-24-14]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

A Desha County jury found appellant Beau Blissitt guilty of second-degree domestic battery and first-degree terroristic threatening. Appellant was sentenced to an aggregate term of thirteen years' imprisonment. He argues on appeal that (1) the evidence was insufficient to support his convictions; (2) the circuit court erred by refusing to accept his guilty plea; (3) the circuit court abused its discretion by denying his motion for continuance to obtain additional witnesses; (4) the circuit court erred by admitting Kenny Blissitt's deposition testimony in its entirety, including inadmissible portions; and (5) the circuit court erred by allowing the prosecutor to misstate the law regarding parole eligibility to the jury. We affirm.

Appellant was charged with second-degree domestic battery and first-degree terroristic threatening by criminal information following a February 1, 2024, incident involving his

father, Kenny Blissitt. Appellant's jury trial took place on August 2. Mark Harnon of the McGehee Police Department testified that he responded to a disturbance call at Kenny and Pamela Blissitt's residence on February 1. He stated that Kenny looked like he had been involved in a fight and that he noticed blood on Kenny's arm. He took photos of the residence while he was there, and those photos were subsequently introduced showing that a recliner was flipped backward and showing blood in various areas, including the floor, hallway, and wall.

Pamela testified that appellant is her stepson. She stated that she was asleep when the altercation in question took place. She said that her dog woke her up, and at that time, she heard yelling coming from the other side of the house. When she went to investigate, she saw Kenny lying on his back on the kitchen floor and appellant standing at the dining table packing some things into his backpack. She said that she noticed blood on Kenny and on the floor and the rug. She testified that she helped Kenny get to his feet and then returned to her room to retrieve her phone. She stated that she heard a thump and overheard appellant taunting Kenny and telling him to "lay there and cry." She admitted that she did not know how Kenny ended up on the floor the second time. She stated that appellant went outside and that she also went outside to get her dog because it followed appellant out. She stated that she asked appellant to leave, but he told her that he had not said everything he had to say yet. She said that when she went back inside, she realized that Kenny had gotten his gun. She stated that appellant was not allowed back inside. Pamela said that she received a text message from appellant that night saying, "I have a pistol in my

2

truck and would have murdered him if he had pulled the trigger once. LETS GIVE [an] Alzheimer's patient a gun and see what the fuck happens." She testified that the message frightened her and that she feared for Kenny's life. Pamela testified that when she checked Kenny, she noticed what appeared to be a carpet burn on his back. She described the burn as bright red and stated that it took several weeks to heal. She said that Kenny went to the doctor about five or six days later for shoulder pain associated with his fall. Pamela stated that Kenny is diabetic and suffers from congestive heart failure and dementia.

Kenny gave video-deposition testimony of the events on the date in question. Kenny's deposition testimony was played for the jury. Kenny stated that he was currently sixty-five years old and that appellant is his son. He said that he and appellant had an altercation that led to appellant hitting him in the head and dragging him by his feet from his chair. He testified that appellant pulled him to the stairwell and that, during this time, he had his hands up trying to protect his head. He denied fighting back. He stated that he suffered bruising and scrapes on his forearm and a scrape on his back. He stated that appellant stopped to put something in his car, and so he went and he retrieved his gun after Pamela helped him up. He explained that he retrieved his gun because he was scared and did not want to be "drug down the stairs" or "drowned in the Mississippi River" as appellant had threatened.

Appellant unsuccessfully moved for directed verdicts at the close of the State's evidence. He argued that there was no evidence that he knowingly caused injury to Kenny to support second-degree domestic battery. As for first-degree terroristic threatening,

3

appellant contended that the text message was communicated to someone other than Kenny and that it related to something that had already occurred, not something intended to happen in the future. He also argued that there was no evidence that appellant actually said anything about drowning Kenny.

Appellant testified that he was discussing Kenny's need to undergo an MRI when Kenny became aggressive. He stated that he got up and started packing his things to leave. He said Kenny tried to push him but lost his balance and fell to the ground. He stated that as he was trying to get to his things, Kenny was on the ground and grabbing and holding onto appellant's ankles. Appellant testified that he pulled Kenny between the living room and the dining room so that he could get around Kenny. He stated that when he came back into the house after taking some of his things to the car, Kenny was up and trying to fight him again. He said that he left but came back again to get the rest of his things and saw Kenny standing at the top of the stairs with a gun pointed at him. He denied dragging Kenny to the top of the stairs or threatening to drown him. Appellant stated that "it would be silly to threaten to drown somebody in the river 15 miles away." He stated that he did not intend to hurt Kenny, he just wanted to get out of the house. He also said that he did not know how blood got in the hallway. Appellant denied taunting Kenny and denied that Pamela ever came outside of the house.

Pamela testified on rebuttal that Kenny had never been physically angry since being diagnosed with dementia. Appellant unsuccessfully renewed his directed-verdict motions.

The jury found appellant guilty, and he was sentenced to thirteen years' imprisonment. The sentencing order was filed on August 8. Appellant filed a timely notice of appeal.

Appellant argues that the evidence was insufficient to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only that evidence supporting the verdict.[1] We affirm a judgment of conviction if it is supported by substantial evidence.[2] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without requiring the jury to resort to speculation or conjecture.[3] Matters of credibility are for the jury, which can choose to believe part or all of any witness's testimony and resolve any conflict in the evidence or testimony.[4]

A person commits second-degree domestic battery if he knowingly causes physical injury to a family or household member he knows to be sixty years of age or older.[5] Appellant argues that he did not knowingly cause physical injury to his father. A criminal defendant's intent or state of mind is seldom apparent.[6] One's intent or purpose, being a state of mind,

---

[1]*Miller v. State*, 2025 Ark. App. 229, 711 S.W.3d 850.

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]Ark. Code Ann. § 5-26-304(a)(4) (Repl. 2024).

[6]*Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353.

can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances.[7] Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances.[8] Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts.[9] The evidence viewed in the light most favorable to the State shows that appellant hit Kenny in the head, grabbed him by his legs and pulled him from a recliner and dragged him through the hallway to the top of the stairs. Blood found on the floor and walls was consistent with this narrative, even though appellant denied it. At the time this happened, Kenny had been diagnosed with dementia and suffered other serious medical conditions. Thus, the jury could conclude that appellant intended or knowingly caused Kenny's injuries.

A person commits first-degree terroristic threatening if, with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person.[10] Appellant threatened to drown Kenny in the Mississippi River. When appellant left the house and went to his car, Kenny retrieved

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Ark. Code Ann. § 5-13-301(a)(1)(A) (Repl. 2024).

6

his gun because he did not want to be drowned in the river. This shows that Kenny was scared, although there is no requirement that the intended recipient be terrorized.[11] Appellant points to the fact that the Mississippi River is fifteen miles from Kenny's residence, but that has no bearing on whether appellant committed first-degree terroristic threatening because there is no requirement that the accused had the immediate ability to carry out the threat.[12] The jury found that it was appellant's purpose to terrorize Kenny, and we cannot say that this was in error. Because we affirm on the basis of appellant's threat to drown Kenny, we need not address the text message.

Appellant argues in his second point on appeal that the circuit court erred by refusing to accept his guilty plea. He contends that he recited a sufficient factual basis for both charges at his change-of-plea hearing and that the circuit court should have accepted his guilty plea and sentenced him to probation. Arkansas Rule of Criminal Procedure 24.6[13] states that the circuit court shall not accept a guilty plea without making such inquiry as will establish that there is a factual basis for the plea. Rule 24.3(d) requires the State to assent to a waiver of a jury trial in a criminal case before a guilty plea can be accepted by the court.

On July 31, when the parties were in plea negotiations, appellant indicated that he wanted to go to trial. However, the next day, he stated that he wished to plead guilty to the

---

[11]*Hughes v. State*, 2020 Ark. App. 114, 596 S.W.3d 58.

[12]*See id.*

[13](2024).

two charges against him. The circuit court asked appellant what he did to constitute second-degree domestic battery and first-degree terroristic threatening. For domestic battery, appellant stated that he grabbed Kenny by his arms and moved him out of the way so that appellant could get his things. When asked to be more specific, appellant stated that Kenny was lying on his back in the doorway, and appellant "pulled him on the floor out of the doorway." Appellant stated that he later learned that Kenny suffered injuries due to appellant's actions. For terroristic threatening, appellant stated, "Apparently, I said that I would drown [Kenny] in the river." His attorney stepped in and stated that appellant "knows he said something, he does not recall the actual contents of his statement, but he agrees that if his father is saying that's what he said, that's what he said - - he agrees that that's true." When asked about the text message he sent to his stepmom threatening to kill Kenny, appellant stated that he told her that "if [Kenny] would have shot at [him, he] would have gotten a gun and shot at [Kenny]." The State told the circuit court that appellant had provided "a totally insufficient factual basis[,] and that if [appellant] want[ed] to tell his side of events to a jury trial then [the State] believe[d] that's what [they] should do." The circuit court subsequently denied the plea because appellant's statement of the facts did not amount to the charged offenses. Given these facts, we cannot say that the circuit court erred by refusing to accept appellant's guilty plea.

For his third point on appeal, appellant argues that the circuit court abused its discretion by denying his motion for continuance to obtain additional witnesses. He specifically argues that if the continuance was granted, he would have been able to call

8

Jennifer Williams to corroborate his testimony that Kenny was prone to violent outbursts and was having such an outburst on the night in question. It is within the circuit court's discretion to grant or deny a motion for continuance, and we will not reverse the circuit court's decision absent a clear abuse of discretion.[14] The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision.[15] An abuse of discretion requires the appellant to make a showing that the circuit court acted improvidently, thoughtlessly, or without due consideration.[16] An appellant must also demonstrate that, as a result of the ruling on the motion for a continuance, he suffered prejudice that amounts to a denial of justice.[17]

Rule 27.3 of the Arkansas Rules of Criminal Procedure provides that a circuit court shall grant a continuance only upon a showing of good cause and shall take into account the request or consent of the prosecuting attorney or defense counsel as well as the public interest in the prompt disposition of the case. In deciding whether to grant or deny a motion for a continuance to secure the presence of a witness, the circuit court should consider (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing

---

[14]*See Haskins v. State*, 2013 Ark. App. 613.

[15]*Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004).

[16]*Hill v. State*, 2015 Ark. App. 587, 473 S.W.3d 556.

[17]*Id.*

of an affidavit stating not only what facts the witness would prove but also that the affiant believes them to be true.[18]

Appellant moved for continuance on July 31, two days before his jury trial was to begin. He indicated that he wanted Williams to testify in his defense but said that she was not available to testify on the scheduled date of his trial. He conceded that he had not disclosed Williams to the State as a possible witness. Appellant renewed his motion for continuance the day of his trial. Appellant maintained that he was not aware of the witness until after the deadline to disclose witnesses but stated that even if he had disclosed the witness, she would not have been available to testify that week. The circuit court denied the request. Here, appellant waited two days before his jury trial to seek a continuance for a witness whom he failed to disclose to the State; he did not present the circuit court with any facts to ensure that he could procure the witness's attendance even if the continuance was granted; and there was no affidavit filed with his motion. Based on these facts, the circuit court did not abuse its discretion by denying appellant's motion for a continuance.

Appellant argues in his fourth point on appeal that the circuit court erred by admitting Kenny's deposition in its entirety because it included inadmissible portions. Our standard of review for evidentiary rulings is whether the circuit court abused its discretion.[19]

---

[18]*Hudson v. State*, 2014 Ark. App. 253.

[19]*Wheeler v. State*, 2025 Ark. App. 407.

Depositions are allowed under certain circumstances in criminal proceedings.[20] Objections to receiving in evidence a deposition or part thereof may be made as provided in civil actions.[21] Objections may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason that would require the exclusion of the evidence if the witness were then present and testifying.[22]

Before trial, Kenny gave video-deposition testimony about the incident that took place with appellant. On redirect, when asked why he retrieved his gun, Kenny responded that he "didn't want to be drug down the stairs" and "didn't want to be drowned in the Mississippi River, so [he] went and got a gun." When counsel asked Kenny if appellant told Kenny that appellant was going to drown him in the Mississippi River, an objection was made by appellant's counsel on the basis that it was a leading question. Kenny responded, "Yes, ma'am." Counsel then rephrased the question, asking instead whether appellant told Kenny that appellant was going to hurt him. Kenny answered that appellant "said he was going to drown me." When asked where, he responded, "In the Mississippi River." At appellant's trial, appellant objected to the jury seeing the portion of the deposition where the objection for leading was made. The circuit court overruled the objection stating, "I don't consider it entirely leading given that the witness had already stated . . . who he was

---

[20]Ark. Code Ann. § 16-44-202 (Supp. 2023).

[21]Ark. Code Ann. § 16-44-202(e).

[22]Ark. R. Civ. P. 32(b) (2024).

11

talking about having an altercation with -- and he had already stated that he did not want to be drowned in the river." The circuit court did not find it prejudicial to appellant because the question was rephrased, and Kenny stated that appellant threatened to drown him in the Mississippi River.

Under Rule 611(c) of the Arkansas Rules of Evidence, leading questions should not be used during the direct examination of a witness except as may be necessary to develop his testimony. The rule does not completely bar leading questions on direct but gives the circuit court discretion to permit leading questions to develop a witness's testimony; we will not reverse an evidentiary ruling absent a manifest abuse of discretion.[23] Here, the circuit court did not abuse its discretion because counsel only repeated Kenny's statement. This repetition did not suggest an answer or insert a detail that should have originated from Kenny. Even if the court had abused its discretion by allowing the admission of that portion of the deposition, any error was harmless because the question was rephrased, and the same information was elicited.

Finally, appellant argues that the circuit court erred by allowing the prosecutor to misstate the law regarding parole eligibility to the jury. The prosecutor told the jury that if they sentenced appellant to six years, he would serve only one year. Appellant argues that the "prosecutor clearly misstated the law in an effort to get the jury to set a maximum sentence. Prejudice is obvious given the jury sentenced [appellant] to the maximum sentence

---

[23]*Standridge v. State*, 2023 Ark. App. 141, 662 S.W.3d 255.

of imprisonment on one of his convictions." Appellant acknowledges that no objection was made at trial but contends that the third exception to the contemporaneous-objection rule set out in *Wicks v. State*,[24] applies. This exception concerns the circuit court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial.[25] The third exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof. This argument has been raised before by appellate counsel, and our supreme court has refused to expand the third exception to include these situations.[26] The *White* court held that "there is no basis for us to apply the third *Wicks* exception to the prosecutor's closing argument since this does not affect the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof.[27] *Wicks* does not apply in this situation; thus, this issue is not preserved for our review.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

---

[24]270 Ark. 781, 606 S.W.3d 366 (1980).

[25]*Id.*

[26]*See White v. State*, 2023 Ark. 90, 667 S.W.3d 533.

[27]*Id.* at 10, 667 S.W.3d 540.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.