Cite as 2026 Ark. App. 230

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-25-310

|  |  |
|---|---|
| | Opinion Delivered April 15, 2026 |
| ERIK WAYNE DOSSEY | |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-22-621] |
| V. | |
| | HONORABLE RALPH C. OHM, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED; REMANDED FOR CORRECTION OF SENTENCING ORDER |

**BART F. VIRDEN, Judge**

A Garland County jury convicted appellant Erik Wayne Dossey of second-degree unlawful discharge of a firearm from a vehicle; aggravated assault; and second-degree endangering the welfare of a minor. In a separate phase of the trial, the jury also convicted Dossey of possession of a firearm by certain persons (a felon). The jury sentenced him as a habitual offender to an aggregate term of five years' imprisonment. Dossey argues that there was insufficient evidence to support his convictions. We affirm but remand for correction of the sentencing order.[1]

---

[1]Dossey was convicted of second-degree endangering the welfare of a minor for which he received a suspended one-year term in county jail; however, the sentencing order incorrectly shows that he was convicted of *contributing to the delinquency* of a minor with an *imposed* sentence of one year in jail. Also, the sentencing order does not reflect Dossey's

I.  *Background*

On July 30, 2022, Dossey was driving through Hot Springs with his then-thirteen-year-old son, Braiden, to pick up a pizza for dinner. Dossey, who was driving a BMW car, became involved in a road-rage incident with Michael Windstein, who was driving a Ford F-150 truck. Windstein, who has worked at the Arkansas Department of Correction for seventeen years, said that he was on his way to a barbeque with coworkers. In describing what happened, Windstein said that

> the BMW is slowing down as I'm coming up behind it, and it brake checks me[,] and [I] almost [ran] in[to] the back of it. And then I just, like, get over, get over, guy. And he—we get up on top of the rise from McLeod going to Higdon Ferry, it makes a little straightaway, and he finally gets over, and I'm starting to pass him. And as I'm passing him, I see his window roll down, and the windows are limousine-tinted dark[—]you couldn't see anything in there. I look over, and he's pointing a gun at me underneath his chin like this. (GESTURING). And I was like, really? So, I pass him, get over. About that time, I hear a ricochet off the roof of my truck. The bullet striking my truck.

Windstein, who often shoots at metal targets during his firearms training, testified that a bullet ricocheting off of metal makes a distinct sound. Windstein further testified that he called 911. He saw that Dossey was exiting, so he followed Dossey and gave the 911 dispatcher a description of Dossey's vehicle and license-plate information. Windstein said that, when Dossey reached a yield sign, he jumped out of his car and approached his (Windstein's) truck. He said that Dossey punched his driver's-side mirror and door, damaging both. Windstein accused Dossey of shooting his truck, which Dossey denied.

---

habitual-offender status. We thus remand for the limited purpose of fixing these clerical errors.

Windstein said that he did not know whether Dossey still had a gun in his hand and warned him that he had a gun as well. Windstein said that he routinely carries a gun with him and showed it to Dossey to "let him know." Windstein said that Braiden then ran up beside Dossey and that he (Windstein) "stopped dead in his tracks." Windstein testified that he saw a pistol in Dossey's left front shorts pocket and made a decision that he "didn't want to shoot this man in front of this kid." He said that knowing that Dossey's gun was not in his hand "de-escalated [the situation]." Windstein said that Dossey and Braiden then ran back to the BMW and drove to Harbor Freight. Windstein testified that he continued to follow them into the parking lot but that the 911 dispatcher told him to stop following them.

Chris Chapin and Stephen Parrott, patrol officers with the Hot Springs Police Department, responded to Harbor Freight and saw the bullet mark on Windstein's truck. Officer Chapin then went to a gas station where Dossey had been stopped. Chapin said that he searched Dossey's car and found "[n]othing but a pizza." Corporal Kevin Hampton with the Garland County Sheriff's Office testified that he had responded to a "BOLO" on the BMW and followed Dossey into the parking lot of a gas station. Hampton said that Dossey claimed, upon being put into a patrol car, that he was the one who had been shot at in traffic. Sergeant Kevin Franklin with the Hot Springs Police Department testified that no gun was found in Dossey's car.

Phillip DeFoor, then a corporal with the Criminal Investigations Division of the Hot Springs Police Department, interviewed Dossey, who said that he did not get out of the fast lane quickly enough for Windstein, who began chasing him on the bypass and shooting at

3

him. Dossey admitted that he had gotten out of his car and damaged Windstein's side mirror but said that he had then jumped back into his car and driven away. DeFoor asked Dossey whether he had shot at Windstein, and Dossey asked, "With what—my fingers?" Dossey said that he did not have a gun because, if he had had a gun, he would have shot and killed Windstein. Dossey was asked why he had not called 911, and he said that "[w]here I'm from[,] you don't call the police." DeFoor interviewed Braiden as well and said that the boy seemed uncomfortable—as though he was trying to protect his father. He said that Braiden described hearing a loud pop, but he thought it was odd that Braiden could hear that sound coming from another car traveling seventy miles an hour with the window open. DeFoor said that he later interviewed Windstein and that "[Windstein] said as he went by [Dossey], he heard a[n] impact, which, like I said from speaking with Braiden earlier, would be consistent of not necessarily hearing a gunshot from another vehicle but hearing the impact on his vehicle." DeFoor said that he recognized the mark on Windstein's truck as a bullet strike—as did Officers Chapin and Parrott during their testimony. DeFoor was also asked about inconsistencies in each side's story and why he believed Windstein, and he said:

> The big thing that stood out to me is [Dossey] acknowledged having a cell phone. You're driving down the road, he claims that Mr. Windstein shot at him. He claims he didn't have a firearm. He got in front of Mr. Windstein where he could have gotten away. He also had a cell phone where he could have called 911. He never called 911. Instead of getting away from the situation, he said [he] stops[,] blocking Mr. Windstein on an exit and confronts a person who he says he knew was armed when he [Dossey] wasn't and says he knew this person had already shot at him. That does not seem like the actions of anybody with any common sense whatsoever.

At the conclusion of the State's case, defense counsel moved for a directed verdict, which was denied. Braiden and Dossey then testified. Defense counsel renewed his directed-verdict motions, and they were denied again. The jury convicted Dossey of unlawful discharge, aggravated assault, and second-degree endangering the welfare of a minor. The jury was then instructed with respect to the charge of felon in possession of a firearm, and the State introduced Dossey's prior felony convictions. The jury returned a guilty verdict on that charge as well. The jury then considered sentencing and decided on an aggregate term of five years' imprisonment. Dossey brought this appeal.

## II. *Standard of Review*

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Webb v. State*, 2019 Ark. App. 436, 587 S.W.3d 252. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty without resorting to conjecture. *Kelly v. State*, 2021 Ark. App. 160. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Webb*, *supra.* We do not determine the credibility of witnesses since this is an issue for the jury and not the court. *Id.* Here, the jury, as the trier of fact, was free to believe all or part of any witness's testimony and resolve questions of conflicting testimony and inconsistent evidence. *Id.*

In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. Ark.

R. Crim. P. 33.1(a). A motion for directed verdict shall state the specific grounds therefor. *Id.* The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. Ark. R. Crim. P. 33.1(c). A motion for directed verdict based on insufficiency of the evidence must specify the respect in which the evidence is deficient, and a motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency, such as insufficient proof on the elements of the offense. *Id.* Moreover, to preserve for appeal the issue of the sufficiency of the evidence to support a conviction on a lesser-included offense, a defendant's motion for directed verdict must address the lesser-included offense either by name or by apprising the trial court of the elements of the lesser-included offense questioned. *Brown v. State*, 2015 Ark. App. 427, 468 S.W.3d 282.

III. *Discussion*

A. Unlawful Discharge of a Firearm from a Vehicle

A person commits second-degree unlawful discharge of a firearm from a vehicle if he recklessly discharges a firearm from a vehicle in a manner that creates a substantial risk of physical injury to another person or property damage to a home, residence, or other occupiable structure. Ark. Code Ann. § 5-74-107(b)(1) (Supp. 2021).

Dossey argues that the trial court should have granted his motion for a directed verdict because there was insufficient evidence that he recklessly fired a gun from his vehicle given that he was not found with a gun; no shell casings were found; no gunpowder-residue

6

test was performed; no experts examined the alleged bullet mark on Windstein's truck; and no witness actually saw him fire a gun.

In moving for a directed verdict at trial, defense counsel said that, while the State may have proved that Dossey acted recklessly, the State had failed to establish that Dossey knowingly discharged a firearm from a vehicle with the expectation of causing physical injury. When he renewed the motion, defense counsel said that the State had failed to establish that Dossey had "a knowing mental state to display a firearm." Dossey is bound by the scope and nature of the directed-verdict motions at trial and cannot change the grounds on appeal. *Hudson v. State*, 2025 Ark. 129, 720 S.W.3d 91. The argument Dossey makes on appeal was not raised and ruled on below; thus, it is not preserved for our review. *Id.* Even if we were to address the argument, the jury clearly did not believe the basic premise of Dossey's argument that he had no firearm to discharge. *See id.*; *Webb*, *supra*.

### B. Aggravated Assault

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely displays a firearm in such a manner that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(2) (Supp. 2021). Dossey argues that there was insufficient evidence that he displayed a gun in a way that created a substantial danger of death or serious physical injury to another person because he did not have gun. He asserts that "[t]he circumstantial evidence in this case—a split-second eyewitness account from Mr. Windstein—was insufficient to convict" him. Dossey contends that the State did not produce a firearm that he possessed;

no video or photographic evidence showing him with a firearm was introduced; no shells or shell casings were found on his person or in his vehicle; and the State could not show, even if this gun existed, that it was loaded. According to Dossey, an unloaded gun or an imaginary one does not create a substantial danger of death or serious physical injury.

When defense counsel moved for a directed verdict below, he argued that the State had failed to establish that a gun was actually pointed in the general vicinity of Windstein and could not have presented a risk of death or serious physical injury to him. When he renewed the motion, defense counsel added that there was no testimony from anyone regarding the type of gun allegedly displayed—whether it was actually a firearm or just a BB gun—and "whether or not there's any opportunity for him to fire it at Mr. Windstein." Dossey's argument on appeal has evolved and is presented to this court for the first time on appeal. *Hudson*, *supra*. Because it was not properly preserved below, we will not address Dossey's argument but will simply point out that the jury was entitled to believe Windstein's account of the events—that he saw Dossey pointing a firearm at him and heard a bullet ricochet off the cab of his truck. *See id.*; *Webb*, *supra*.

### C. Possession of a Firearm by Certain Persons

Pursuant to Ark. Code Ann. § 5-73-103(a)(1) (Supp. 2021), no person who has been convicted of a felony shall possess or own any firearm. Dossey argues that the trial court should have directed a verdict with respect to this charge. He argues that, while it is undisputed that he has prior felony convictions, the State failed to show that he possessed a gun given that no gun was found in connection with the incident, and there was no evidence

that he owned a gun or carried a gun in his vehicle. Dossey contends that Windstein's account should be discredited because there were just two instances of "split-second" observations by one eyewitness who had driven aggressively, brake checked him, sought a confrontation, and threatened him with a gun. He points out that Windstein, who is familiar with guns, did not identify the caliber of weapon he claimed that he (Dossey) possessed.

Dossey, however, failed to move for a directed verdict on the charge of possession of a firearm by certain persons and has therefore waived his challenge to the sufficiency of the evidence pursuant to Ark. R. Crim. P. 33.1(c). When a defendant's dismissal argument is made during a closing argument, it does not preserve a challenge to the sufficiency of the evidence. *Oliver v. State*, 2016 Ark. App. 332, 498 S.W.3d 320. We will not address Dossey's argument for the first time on appeal.

### D. Endangering the Welfare of a Minor

The State charged Dossey with committing first-degree endangering the welfare of a minor; however, the jury convicted him of second-degree endangering the welfare of a minor. A person commits the offense of endangering the welfare of a minor in the second degree if he knowingly engages in conduct creating a substantial risk of serious harm to the physical or mental welfare of another person known by the person to be a minor. Ark. Code Ann. § 5-27-206(a)(1) (Repl. 2013).

Referring specifically to Ark. Code Ann. § 5-27-205(a)(1)—*first-degree* endangering the welfare of a minor—Dossey argues that there was no substantial evidence that he purposely created a risk of serious physical injury to Braiden because he was not the initial aggressor in

9

the road-rage incident; he did not have a gun; he did not point a gun at Braiden; he did not fire a gun in Braiden's general direction; and he did not cause anyone else to point or fire a gun at Braiden.

In moving for a directed verdict, defense counsel argued that there was no substantial risk of death or serious physical injury to Braiden because there was no allegation that Dossey fired the gun inside the car or even in Braiden's general direction. As for the confrontation on the exit ramp, defense counsel said that there was no indication that Dossey had instructed Braiden to exit the car to confront Windstein with him—it was Braiden's voluntary action. Defense counsel renewed his motion, again arguing that the State had failed to show that Dossey created a substantial risk of death or serious physical injury to Braiden.

Dossey argues—both below and on appeal—the elements of an offense of which he was *not* convicted. Whereas first-degree endangering deals with death and serious physical injury, second-degree endangering refers to "serious harm to the [minor's] physical or mental welfare," which means physical or mental injury that causes protracted disfigurement; protracted impairment of physical or mental health; or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-27-206(a)(2). Dossey failed to specifically challenge the sufficiency of the evidence pertaining to the elements of second-degree endangering the welfare of a minor.[2] *See Brown*, *supra*. Dossey has addressed on appeal only first-degree endangering the welfare of a minor, as he did below.

---

[2]The trial court stated that second-degree endangering the welfare of a minor is a lesser-included offense of first-degree endangering. We express no opinion on the accuracy

With that said, Dossey was convicted of knowingly engaging in conduct that created a substantial risk of serious harm to the physical or mental welfare of a minor.[3] One's intent, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. The fact-finder is allowed to draw on common knowledge and experience to infer intent from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

Dossey asserts many "facts" that the jury obviously did not believe given that the jury found that he discharged a firearm at Windstein, striking his truck. While Dossey did not point a gun at Braiden or instruct him to accompany him to approach Windstein, the jury could reasonably conclude that Dossey—by shooting at Windstein in traffic and then confronting Windstein, who was following them—knowingly engaged in conduct that created a substantial risk of serious harm to Braiden's physical or mental welfare. Even if

---

of that statement. *See Burnette v. State*, 354 Ark. 584, 590 n.2, 127 S.W.3d 479, 482 n.2 (2003) (refusing to reach the issue of whether second-degree endangering is indeed a lesser-included offense of first-degree endangering). We note, however, that the jury here was instructed on both offenses and that Dossey raised no objections to the instructions.

[3]A person acts knowingly with respect to the person's conduct or the attendant circumstances when he is aware that his conduct is of that nature or that the attendant circumstances exist; or a result of the person's conduct when he is aware that it is practically certain that his conduct will cause the result. Ark. Code Ann. § 5-2-202(2)(A) & (B) (Repl. 2013).

Dossey's argument had been preserved, we would hold that substantial evidence supported Dossey's conviction of this misdemeanor offense.

Affirmed; remanded for correction of sentencing order.

HARRISON and BARRETT, JJ., agree.

*Mitch Rouse*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.